1  SAM N. DAWOOD (CA SBN 178862)
   samdawood@outlook.com
2  LAW OFFFICES OF SAM DAWOOD
   1483 Sutter Street, Suite 514
3  San Francisco, CA 94109
   Tel.:  (415) 310-1759
4  Fax: (415) 310-1759

5  Attorneys for Defendant
   STEVEN KIM

6

7                UNITED STATES DISTRICT COURT

8      NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

9

10 SECOND MEASURE, INC., a Delaware          )  Case No.: 3:15-CV-03395
   corporation,                             )
11                                          )  **DEFENDANT STEVEN KIM'S**
              Plaintiff,                     )  **ANSWER TO COMPLAINT AND**
12                                          )  **COUNTERCLAIMS**
          vs.                                )
13                                          )  *DEMAND FOR JURY TRIAL*
   STEVEN KIM, an individual,                )
14                                          )
              Defendant.                     )
15                                          )
                                            )
16 _____         )
                                            )
17 STEVEN KIM, an individual,                )
                                            )
18         Counterclaim Plaintiff,           )
                                            )
19      vs.                                  )
                                            )
20 MICHAEL BABINEAU, an individual,          )
   LILLIAN CHOU, an individual, and          )
21 SECOND MEASURE, INC., a Delaware          )
   corporation                              )
22                                          )
          Counterclaim Defendants.           )
23 _____

24              **ANSWER TO COMPLAINT**

25      Defendant Steven Kim ("Defendant"), answering for himself and no others, in response

26 to plaintiff Second Measure's ("Plaintiff") Complaint, admits, denies, and alleges as follows:

27      1.      Answering Paragraph 1 of the Complaint, Defendant admits that Plaintiff is a

28 Delaware corporation and maintains its principle place of business in San Mateo County,

California. Except as expressly admitted, Defendant denies, generally and specifically, each and every remaining allegation in this paragraph, and specifically denies that Plaintiff was founded by Michael Babineau and Lillian Chou.

2.     Answering Paragraph 2 of the Complaint, Defendant admits that he resides in Dallas, Texas.

3.     Answering Paragraph 3 of the Complaint, this paragraph contains conclusions of law to which no response is required.

4.     Answering paragraph 4 of the Complaint, Defendant admits Plaintiff is a young startup company incorporated to build tools and services designed to leverage consumer spending data for the ultimate benefit of hedge funds and other investors.  Except as expressly admitted, Defendant denies, generally and specifically, each and every remaining allegation in this paragraph.

5.     Answering paragraph 5 of the Complaint, Defendant admits he seeks and is entitled to one-half of the equity of Plaintiff.  Except as expressly admitted, Defendant denies, generally and specifically, each and every remaining allegation in this paragraph.

6.     Answering paragraph 6 of the Complaint, Defendant admits he is entitled to half of Plaintiff because, among other things, he conceived of the idea, brought it to Mr. Babineau, and caused the idea to mature into Plaintiff.  Except as expressly admitted, Defendant denies, generally and specifically, each and every remaining allegation in this paragraph.

7.     Answering paragraph 7 of the Complaint, Defendant admits that Defendant introduced Mr. Babineau to Mr. Zafar Jafri, that Mr. Jafri was a financial research analyst, and had access to large consumer spending datasets.  On information and belief, Defendant admits that Mr. Jafri was then with hedge fund and sought to trade directly based off trends and information gleaned from the consumer spending datasets.  Except as expressly admitted, Defendant denies, generally and specifically, each and every remaining allegation in this paragraph.

8.     Answering paragraph 8 and footnote 1 of the Complaint, Defendant admits that in September 2013 he discussed the possibility of forming a business with Mr. Babineau, that he did not ask Mr. Babineau to sign a non-disclosure agreement, and that in September 2013 Defendant and Mr. Babineau gained access to a dataset from Yodlee, a company that, *inter alia*, sells such datasets.  Except as expressly admitted, Defendant denies, generally and specifically, each and every remaining allegation in this paragraph.

9.     Answering Paragraph 9 of the Complaint, Defendant admits that there are multiple companies currently offering services and products based on consumer spending data. Except as expressly admitted, Defendant denies, generally and specifically, each and every remaining allegation in this paragraph.

10.     Answering Paragraph 10 of the Complaint, Defendant admits that he and Mr. Babineau worked together to form Plaintiff.  Except as expressly admitted, Defendant denies, generally and specifically, each and every remaining allegation in this paragraph.

11.     Answering Paragraph 11 of the Complaint, Defendant denies, generally and specifically, each and every allegation in this paragraph.

12.     Answering Paragraph 12 of the Complaint, Defendant denies, generally and specifically, each and every allegation in this paragraph.

13.     Answering Paragraph 13 of the Complaint, Defendant denies, generally and specifically, each and every allegation in this paragraph.

14.     Answering Paragraph 14 of the Complaint, Defendant denies, generally and specifically, each and every allegation in this paragraph.

15.     Answering Paragraph 15 of the Complaint, Defendant denies, generally and specifically, each and every allegation in this paragraph.

16.     Answering Paragraph 16 of the Complaint, Defendant denies, generally and specifically, each and every allegation in this paragraph.

17.     Answering Paragraph 17 of the Complaint, Defendant denies, generally and specifically, each and every allegation in this paragraph.

18.     Answering Paragraph 18 of the Complaint, Defendant admits that he is entitled to 50% ownership of Plaintiff.  Except as expressly admitted, Defendant denies, generally and specifically, each and every remaining allegation in this paragraph.

19.     Answering Paragraph 19 of the Complaint, Defendant denies, generally and specifically, each and every allegation in this paragraph.

20.     Answering Paragraph 20 of the Complaint, Defendant incorporates by reference its responses to the allegations contained in paragraphs 1 through 19 as if fully stated herein.

21.     Answering Paragraph 21 of the Complaint, Paragraph 21 contains conclusions of law to which no response is required.  To the extent a response is deemed required, Defendant denies, generally and specifically, each and every allegation in this paragraph.

22.     Answering Paragraph 22 of the Complaint, Paragraph 22 contains conclusions of law to which no response is required.  To the extent a response is deemed required, Defendant denies, generally and specifically, each and every allegation in this paragraph.

23.     Answering Paragraph 23 of the Complaint, Defendant admits he contends that he has a substantial equity interest in Plaintiff and that its officers and directors owe him a fiduciary duty.

24.     Answering Paragraph 24 of the Complaint, Paragraph 24 contains conclusions of law to which no response is required.  To the extent a response is deemed required, Defendant denies, generally and specifically, each and every allegation in this paragraph.

25.     Answering Paragraph 25 of the Complaint, Paragraph 25 contains conclusions of law to which no response is required.  To the extent a response is deemed required, Defendant denies, generally and specifically, each and every allegation in this paragraph.

26.     Answering Paragraph 26 of the Complaint, Paragraph 26 contains conclusions of law to which no response is required.  To the extent a response is deemed required, Defendant denies, generally and specifically, each and every allegation in this paragraph.

27.     Answering Paragraph 27 of the Complaint, Defendant incorporates by reference its responses to the allegations contained in paragraphs 1 through 26 as if fully stated herein.

28. Answering Paragraph 28 of the Complaint, Defendant denies, generally and specifically, each and every allegation in this paragraph.

29. Answering Paragraph 29 of the Complaint, Defendant denies, generally and specifically, each and every allegation in this paragraph.

30. Answering Paragraph 30 of the Complaint, Defendant denies, generally and specifically, each and every allegation in this paragraph.

31. Answering Paragraph 31 of the Complaint, Defendant denies, generally and specifically, each and every allegation in this paragraph.

32. Answering the Prayer for Relief in the Complaint, Defendant denies that Plaintiff is entitled to any of the relief requested in its Prayer for Relief

## SEPARATE AND ADDITIONAL DEFENSES

By alleging the matters set forth in the separate and additional defenses below, Defendant is not in any way agreeing or admitting that it has the burden of proof and/or persuasion with respect to any of these matters.  Anything not specifically admitted is deemed to be denied.

## FIRST AFFIRMATIVE DEFENSE

The Complaint, and each and every claim and cause of action alleged therein, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Each and every claim and cause of action in the Complaint is barred by the doctrine of estoppel because Plaintiff's own breach of any agreement, and breach of the covenant of good-faith and fair dealing, thereby estops Plaintiff from complaining of damages, if any.

## THIRD AFFIRMATIVE DEFENSE

Each and every claim and cause of action in the Complaint is barred by the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

Each and every claim and cause of action in the Complaint is barred by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery of any damages because of, and to the extent of, its failure to mitigate damages.

### SIXTH AFFIRMATIVE DEFENSE

Each and every claim and cause of action in the Complaint is barred by the doctrine of waiver.

### SEVENTH AFFIRMATIVE DEFENSE

Each and every claim and cause of action in the Complaint is barred by the doctrine of acquiescence.

### EIGHTH AFFIRMATIVE DEFENSE

Each and every claim and cause of action of the Complaint is barred on the ground that the answering Defendant was justified in doing any and/or all of the acts alleged in the Complaint.

### NINTH AFFIRMATIVE DEFENSE

Each and every claim and cause of action of the Complaint is barred on the ground that Plaintiff failed to fulfill one or more duties and/or obligations owed to Defendant.

### TENTH AFFIRMATIVE DEFENSE

The second cause of action of the Complaint for breach of oral agreement is barred because if any such agreement between Defendant and Plaintiff existed, which Defendant denies, Plaintiff released Defendant from any further obligation under the agreement.

### ELEVENTH AFFIRMATIVE DEFENSE

The second cause of action of the Complaint for breach of oral agreement is barred under the doctrine of lapse.  If any such agreement between Defendant and Plaintiff existed, which Defendant denies, Plaintiff's rights under the agreement have terminated through Plaintiff's neglect to exercise them within some time limit.

## TWELFTH AFFIRMATIVE DEFENSE

The second cause of action of the Complaint for breach of oral agreement is barred because, if any such agreement between Defendant and Plaintiff existed, which Defendant denies, Plaintiff repudiated the agreement and therefore released Defendant of all duties under the alleged agreement.

## THIRTEENTH AFFIRMATIVE DEFENSE

The second cause of action of the Complaint for breach of oral agreement is barred because under the doctrine of prospective inability to perform.  If any such agreement between Defendant and Plaintiff existed, which Defendant denies, Defendant requested adequate assurances from Plaintiff that it would perform and received none, thus entitled Defendant to suspend his own performance.

## FOURTEENTH AFFIRMATIVE DEFENSE

The second cause of action of the Complaint for breach of oral agreement is barred because, if any such agreement between Defendant and Plaintiff existed, which Defendant denies, Plaintiff authorized, consented to, and/or ratified the acts of Defendant as alleged in the Complaint, and therefore may not complain thereof.

## FIFTEENTH AFFIRMATIVE DEFENSE

The second cause of action of the Complaint for breach of oral agreement is barred because, if any such agreement between Defendant and Plaintiff existed, which Defendant denies, the terms of the alleged agreement have been materially modified so as to relieve Defendant of the obligation to perform.

## SIXTEENTH AFFIRMATIVE DEFENSE

The second cause of action of the Complaint for breach of oral agreement is barred by way of rescission of the alleged agreement.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The second cause of action of the Complaint for breach of oral agreement is barred because, if any such agreement between Defendant and Plaintiff existed, which Defendant

denies, Defendant's obligations under the alleged agreement have been extinguished due to a failure of a condition precedent for Defendant's performance.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff has failed, and continues to fail, to act reasonably to mitigate the damages alleged in the Complaint.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff has a complete and adequate remedy at law for any injuries it may have suffered, and therefore is not entitled to seek equitable relief.

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff would be unjustly enriched if it was allowed to recover any part of the damages alleged in the Complaint.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff claims are barred, in whole or in part, by any applicable statute of limitations.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the statute of frauds.

### ADDITIONAL DEFENSES

Defendant presently has insufficient knowledge or information upon which to form a belief as to whether he may have additional, as yet unstated, defenses available.  Defendant reserves the right to assert additional defenses.

### PRAYER FOR RELIEF AS TO COMPLAINT

WHEREFORE, Defendant Steven Kim prays that:

1.      Plaintiff take nothing by way of its Complaint and that it be dismissed with prejudice;

2.      The Court enter judgment in favor of Defendant in this action;

3.      The Court award Defendant all of their costs incurred in this action; and

4.      The Court award such other and further relief to Defendant as it deems just and proper.

**COUNTERCLAIMS**

For his counterclaims against Plaintiff and Counterclaim Defendants Second Measure, Inc., Michael Babineau, and Lillian Chou, Defendant and Counterclaim Plaintiff Steven Kim states as follows:

**Introduction**

1.      Defendant and Counterclaim Plaintiff Steven Kim (hereafter "Mr. Kim") brings this action to obtain relief from the betrayal and breach of fiduciary duty committed by Counterclaim Defendants Michael Babineau ("Mr. Babineau") and Lillian Chou ("Ms. Chou"), and Second Measure, Inc. ("Second Measure") involving a startup venture founded by Mr. Kim and Mr. Babineau, two long-time close friends, to leverage consumer spending data for the benefit of investors.  The startup venture was initially code-named "Recon" and ultimately became Second Measure, a name coined by Mr. Kim as it denoted musicality.  Mr. Kim and Mr. Babineau agreed they would be equal owners in Second Measure and worked countless long hours together on developing the business with the aspiration of making it a success together.  As Mr. Babineau aptly expressed their mutual intent to Mr. Kim on or around September 2014 before improperly excluding and locking Mr. Kim out of Second Meausure: "Let's get this shit figured out and get rich together.  Those hovercrafts aren't going to race themselves."  There was no question in either of their minds that they were co-builders and developers of Second Measure and would share equally in its success.

2.      Despite the fact that Mr. Kim devised the idea for Second Measure, used his specialized and proprietary financial knowledge to devise the product, and fully performed all his obligations in the joint venture, Mr. Babineau, joined by his girlfriend, Ms. Chou, ultimately improperly excluded Mr. Kim from all participation, profit, and interest in the joint venture/partnership and continue to this day to use his proprietary financial knowledge without his consent in the business.  Their actions were part of a deliberate scheme to deprive Mr. Kim of his rightful ownership interest in the joint venture/partnership so as to improperly benefit themselves at the expense of Mr. Kim, in express violation of Mr. Babineau's agreement with

Mr. Kim and the legal duties to him.  From then on and to this day, despite Mr. Kim's role as an integral founder of the business, Mr. Babineau and Ms. Chou usurped control of the business and held themselves out to the public as the individuals who started the business.

3.      By this action, Mr. Kim seeks to have his rights and interests resorted to what they would have been but for Counterclaim Defendants' improper and actionable conduct.

**Parties**

4.      Mr. Kim is an individual residing in Dallas, Texas.

5.      Second Measure, on information and belief, is a Delaware corporation with its principal place of business in San Mateo County, California.  Mr. Kim is informed and believes, and on that basis alleges, that Second Measure holds assets and interests rightfully belonging to the joint/venture partnership.  It is further alleged, on information and belief, that Mr. Babineau and Ms. Chou at various times used Second Measure to bring money and property in and out of the joint venture/partnership, including to deposit joint venture partnership income and to pay joint venture/partnership expenses.

6.      Mr. Babineau is an individual who, on information and belief, resides in San Mateo County, California.

7.      Ms. Chou is an individual who, on information and belief, resides in San Mateo County, California.

8.      Mr. Babineau, Ms. Chou, and Second Measure are jointly and severally liable for the wrongful conduct set forth herein because they are aiding and abetting each other and/or conspired to commit such wrongful conduct.

**Jurisdiction and Venue**

9.      This Court has subject matter jurisdiction of these counterclaims under 28 U.S.C. § 1367 as compulsory counterclaims that fall within the Court's supplemental jurisdiction. Venue of these counterclaims is proper in this judicial district.

**Facts**

10.     Mr. Kim and Mr. Babineau are long time friends who first met in the Summer of 2003 when they were both working at MCI World Telecom in Alburquerque, New Mexico in their college years.  They became close friends and would connect every summer and spend most summer evenings in each other's company.  After college, Mr. Kim attended Mr. Babineau's wedding in the Virgin Islands, and they kept in close contact and maintained a close friendship throughout the years, even while residing in different cities.  Ultimately, they both ended up in the San Francisco Bay Area.  In fact, Mr. Kim convinced Mr. Babineau to move to the Bay Area as opportunities for an engineer and the social capital that comes with being plugged into a network of engineers and innovative minds would be an invaluable asset for Mr. Babineau's career.

11.     Mr. Kim has years of extensive experience in the financial sector, having spent six years as an investor in both public and private markets.  Mr. Kim started his hedge fund career at Criterion Capital, a three billion dollar hedge fund in San Francisco, where he covered the Software and Internet sectors.  It was during this time that he came to appreciate the power of data, and started incorporating available datasets into his investment process.  Over time, he built an expertise around determining which data sets could provide fundamental insights and how those insights should be applied. He considered himself to be ahead of his colleagues in this practice, and is considered a thought leader within his organization when it comes to leveraging data sets.  To several of his third party data vendors (including 7Park), he is considered one of their most forward thinking clients.  Through his years of experience, he developed highly sophisticated proprietary techniques and processes for applying data to fundamental financial analysis.

12.     On or around September 2013, Mr. Kim had the general idea of using his specialized and proprietary investment knowledge, methodology, and know-how gained through years of experience in the industry to analyze and leverage massive consumer credit card spending data sets for the benefit of investors who hadn't built this expertise or did not have the

technical capability or resources to leverage data sets.  Mr. Kim endeavored to share his idea with his friend Mr. Babineau, an engineer, who does not have Mr. Kim's sophisticated financial expertise and experience with data sets.  Mr. Kim did so for the purpose of potentially forming an association with Mr. Babineau to commercialize Mr. Kim's idea together in the form of a joint venture or partnership.   The broader concept of leveraging consumer spending data for the benefits of investors is not new.  Investors leverage data every day to help make better investment decisions.  The problem was it was too cumbersome for the average investor to utilize.  Even if one had the engineering skills to structure and organize and query the data, the most difficult task involved figuring out if and how the data should be applied.  This is where Mr. Kim's proprietary knowledge and experience were invaluable.

13.     Mr. Babineau acknowledged the commercial viability of Mr. Kim's idea and indicated his assent to the notion that the two were forming an association as partners or joint venturers to pursue the commercialization of Mr. Kim's idea.  They agreed that Mr. Babineau, as the computer engineer, would be responsible for enabling access to and organizing the large consumer spending data sets that they planned to use. And that Mr. Kim, as the seasoned investment professional, would be responsible for figuring out how the data should be applied.  Mr. Kim's specialized and proprietary financial knowledge and methodology for applying the data was a closely held trade secret that he ultimately shared in confidence with Mr. Babineau (and later Ms. Chou) with the expectation that it would remain confidential.

14.     At around this point, Mr. Kim and Mr. Babineau, entered into an explicit oral agreement as to their respective interests in their joint venture/partnership to develop the business for their common profit.  That explicit agreement was that their interests in the business would be equally distributed, i.e., each of them would have ½ ownership and profit interests in the joint venture/partnership.  They initially called the business "Recon".  At a later point, they jointly agreed to change the name formally to Second Measure, a name voted on by Mr. Kim as it connoted musicality.  Also, at this time Mr. Kim and Mr. Babineau agreed that each would have equal say in the control of the management of the joint venture/partnership.  They agreed

verbally that Mr. Kim would assume responsibility for the business side of the joint

veture/partnership, and Mr. Babineau would lead the technical side.   Ms. Chou was never

assigned an explicit leadership role in the business, as her job was primarily helping Mr.

Babineau perform his technical duties.  As alleged below, until the point where Mr. Babineau

and Ms. Chou improperly kicked Mr. Kim out of the business, Mr. Kim's conduct and the

outward conduct of Mr. Babineau and Ms. Chou were fully consistent with this explicit oral

agreement.

15.     Towards their joint goal of developing the business, on or around September

2013, Mr. Kim and Mr. Babineau, in tandem, each signed written non-disclosure agreements

with data provider Yodlee in order to allow them to access its consumer spending data sets and

determine how to best leverage them.

16.     Together they spent many months working long hours, including well past

midnight on many occasions, organizing the large data sets, and applying various metrics that

Mr. Kim formulated, based on his specialized and proprietary financial knowledge to provide

applicable investment insights.  Neither Mr. Babineau or Ms. Chou had knowledge of how to use

or apply the massive data sets or how to determine which metrics were important to investors so

as to derive useful insights.  Only Mr. Kim had this specialized and proprietary financial

knowledge and experience, which was invaluable to the business.  Different types of industries

have different key metrics that determine value, and different applications were necessary to

provide actionable investment insights.  Mr. Kim's specialized and proprietary financial

knowledge was essential to gathering such insights. Mr. Babineau relied solely on Mr. Kim's

process, a compilation of methods not ascertainable by others, to derive this information.

17.     During this time, Mr. Kim and Mr. Babineau spent months working together

tagging and organizing massive data sets for over 100 different companies in pursuit of their

joint venture.  They worked late into the night, sometimes until 2 a.m. or 3 a.m. to tag, organize,

understand, and apply insights to the vast data sets they utilized.  They spent hours working in

one or the other's apartments as well as many long hours on Google video chat carrying on back

and forth discussion about methodology and the various applicable metrics to interpret the data. In tandem, they created joint files, documentation, and notes towards this end.  During their partnership, each periodically spent time employed by other companies working at their "day jobs" as well as went through periods of unemployment.  Regardless of whether they had other full time jobs or were unemployed at any given time, they both spent long hours together developing the business.

18.     As would be expected of joint business partners, they also split the costs for business related expenses for much of this period, including server costs and other related infrastructure costs.  In fact, consistent with their understanding that they were joint owners in the business, Mr. Babineau routinely sought Mr. Kim's consent before incurring large server related expenses.

19.     Later in 2014, the relationship began to sour sometime after Mr. Babineau's girlfriend became involved in the business.  She was originally brought on to assist Mr. Babineau with his engineering duties, but later she and Mr. Babineau began a concerted effort to exclude Mr. Kim from the joint venture while continuing to use his specialized and proprietary financial knowledge, that he had shared with them in confidence, to build the business.

20.     As late as August and September 2014, Mr. Kim was still active in business. During this time, Mr. Kim continued to fully perform all his obligations pursuant to the joint venture/partnership agreement.  In recognition of their status as co-equals in the joint venture/partnership, Mr. Kim continued this time voted on important decisions concerning the business.  He contributed significantly to presentations that needed to be prepared on behalf of the business, and actively discussed with Mr. Babineau its most important relationships and priorities. As Mr. Babineau wrote to Mr. Kim on September 11, 2014, "DP1 [short for "Data Provider 1", their codename for Yodlee] is our most important relationship and best opportunity we have to get [Second Measure] going for real.  Right now it doesn't feel we are maximizing our chances for success.  How can we be better as a team?  Do we need better transparency? More cadence?  More effort?"  On September 12, 2014, he wrote to Mr. Kim "I want us to be

back on the same page! Let's get this shit figured out and get rich together.  Those hovercrafts aren't going to race themselves."

21.     At all times, Mr. Kim was paid no monetary compensation for his work, in accordance with his role as a joint venturer/partner in an enterprise that was not yet generating profits, as he was sharing equally in the risks and rewards of the startup.

22.     Unbeknownst to Mr. Kim, at some time after the formation of their joint venture/partnership, Mr. Babineau and Ms. Chou formed an undisclosed intent to eventually wrongfully exclude him from the joint venture/partnership, in order to take for themselves Mr. Kim's rightful share of the enterprise.

23.     On or around late September 2014, Mr. Babineau and Ms. Chou wrongfully and physically shut Mr. Kim out of the joint venture/partnership by, for example, depriving him of access to computer servers and shared online chat and note applications to prevent him from doing any further work on the joint venture/partnership or accessing his work product created up to that point.  Mr. Babineau and Ms. Chou eventually cut off all communication with Mr. Kim, but continued to use his specialized and proprietary financial knowledge and information that he had shared with them to analyze consumer data sets without his authorization or consent.  In an effort to settle their dispute with Mr. Kim, they later suggested hiring him as a consultant with a small equity stake in the business.  But Mr. Kim never accepted their settlement proposal, finding it insulting.

24.     After they wrongfully ousted Mr. Kim from the joint-venture/partnership, Mr. Babineau and Ms. Chou ultimately took the next step, incorporating Second Measure as their own business, continuing to apply the specialized and proprietary financial knowledge that Mr. Kim shared with them in confidence to leverage consumer spending data for the benefit of investors.  On information and belief, since then, Second Measure has received seed investments from certain third parties in exchange for granting them equity shares in the business.

### First Cause of Action

(Breach of Express Joint Venture Agreement)

(As Against Mr. Babineau)

25.     Mr. Kim repeats and adopts the above paragraphs of this Complaint as though fully set forth herein.

26.     In or around Fall 2013, Mr. Kim and Mr. Babineau entered into a valid oral joint venture agreement to form Second Measure (formerly Recon).  Pursuant to their joint venture agreement, Mr. Kim owns 50% of the joint venture and Mr. Babineau owns 50% of the joint venture.

27.     At all times, Mr. Kim performed all conditions, covenants and promises required to be performed on his part in accordance with the terms of the joint venture agreement.

28.     Mr. Babineau breached this joint venture agreement by, among other things, depriving Mr. Kim of his ownership share in the joint venture and the past, present, and future proceeds therefrom, and by obstructing Mr. Kim's right to equally manage and conduct the joint venture's business.

29.     Mr. Babineau has further breached the joint venture agreement by failing to provide Mr. Kim with an accurate accounting of the financial affairs of the joint venture.

30.     Other wrongful acts and/or omissions constituting breach by Mr. Babineau of the joint venture agreement are presently unknown.  Mr. Kim will seek leave of Court to amend this Counterclaim once such additional facts are ascertained through discovery.

31.     As a direct and foreseeable result of the breaches of the joint venture agreement by Mr. Babineau, Mr. Kim has been damaged in an amount according to proof within the jurisdiction of this Court.

**Second Cause of Action**

(Breach of Implied Joint Venture Agreement)

(As Against Mr. Babineau)

32.      Mr. Kim repeats and adopts the above paragraphs of this Complaint as though fully set forth herein.

33.     In performing the acts and engaging in the conduct of co-developing Second Measure together, as described above, Mr. Kim and Mr. Babineau manifested an intention to enter into a joint venture agreement to do those things and to share co-equally in the profits and losses therefrom.  Such acts and conduct included, but were not limited to, combining their efforts and resources to develop the concept of the business, and to implement and market the business, and making important decisions about the business together.

34.     Mr. Babineau and Mr. Kim held themselves out to the public as co-equal joint ventures building the business together.

35.     Mr. Babineau performed these acts and conduct with the intent to manifest his intention to form the described joint venture with Mr. Kim, who understood said intent and acted with his own intent to join the joint venture.

36.     At all times, Mr. Kim performed all conditions, covenants, and promises required to be performed on his part in accordance with the terms of the joint venture agreement.

37.     Mr. Babineau breached this joint venture agreement by, among other things, depriving Mr. Kim of his ownership share in the joint venture and the past, present, and future proceeds therefrom, and by obstructing Mr. Kim's right to equally manage and conduct the joint venture's business.

38.     Mr. Babineau has further breached the joint venture agreement by failing to provide Mr. Kim with an accurate accounting of the financial affairs of the joint venture.

39.     Other wrongful acts and/or omissions constituting breach by Mr. Babineau of the joint venture agreement are presently unknown.  Mr. Kim will seek leave of Court to amend this Counterclaim once such additional facts are ascertained through discovery.

40.     As a direct and foreseeable result of the breaches of the joint venture agreement by Mr. Babineau, Mr. Kim has been damaged in an amount according to proof within the jurisdiction of this Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Third Cause of Action

(Breach of Express Partnership Agreement)

(As Against Mr. Babineau)

41.     Mr. Kim repeats and adopts the above paragraphs of this Complaint as though fully set forth herein.

42.     On or around the Fall of 2013, Mr. Kim and Mr. Babineau entered into a valid oral partnership agreement to form Second Measure (formerly Recon).  Pursuant to this partnership agreement, Mr. Kim owns 50% of the partnership and Mr. Babineau owns 50% of the partnership.

43.     At all times, Mr. Kim performed all conditions, covenants, and promises required to be performed on his part in accordance with the terms of the partnership agreement.

44.     Mr. Babineau breached this partnership agreement by, among other things, depriving Mr. Kim of his ownership share in the partnership and the past, present, and future proceeds therefrom, and by obstructing Mr. Kim's right to equally manage and conduct the partnership's business.

45.     Mr. Babineau has further breached the partnership agreement by failing to provide Mr. Kim with an accurate accounting of the financial affairs of the partnership.

46.     Other wrongful acts and/or omissions constituting breach by Mr. Babineau of the partnership agreement are presently unknown.  Mr. Kim will seek leave of Court to amend this Counterclaim once such additional facts are ascertained through discovery.

47.     As a direct and foreseeable result of the breaches of the partnership agreement by Mr. Babineau, Mr. Kim has been damaged in an amount according to proof within the jurisdiction of this Court.

**Fourth Cause of Action**

(Breach of Implied Partnership Agreement)

(As Against Mr. Babineau)

48.     Plaintiff repeats and adopts the above paragraphs of this Complaint as though fully set forth herein.

49.     In performing the acts and engaging in the conduct of co-developing Second Measure together, as described above, Mr. Kim and Mr. Babineau manifested an intention to enter into a partnership agreement to do those things and to share co-equally in the profits and losses therefrom.  Such acts and conduct included, but were not limited to, combining their efforts and resources to develop the concept of the business, and to implement and market the business, and making important decisions about the business together.

50.     Mr. Babineau and Mr. Kim held themselves out to the public as equal partners building the business together.

51.     Mr. Babineau performed these acts and conduct with the intent to manifest his intention to form and develop the described partnership with Mr. Kim, who understood said intent and acted with his own intent to form and develop the partnership.

52.     At all times, Mr. Kim performed all conditions, covenants, and promises required to be performed on his part in accordance with the terms of the partnership agreement.

53.     Mr. Babineau breached this partnership agreement by, among other things, depriving Mr. Kim of his ownership share in the partnership and the past, present, and future proceeds therefrom, and by obstructing Mr. Kim's right to equally manage and conduct the partnership's business.

54.     Mr. Babineau has further breached the partnership agreement by failing to provide Mr. Kim with an accurate accounting of the financial affairs of the partnership.

55.     Other wrongful acts and/or omissions constituting breach by Mr. Babineau of the partnership agreement are presently unknown.  Mr. Kim will seek leave of Court to amend this Counterclaim once such additional facts are ascertained through discovery.

56.     As a direct and foreseeable result of the breaches of the partnership agreement by Mr. Babineau, Mr. Kim has been damaged in an amount according to proof within the jurisdiction of this Court.

### Fifth Cause of Action

(Breach of Fiduciary Duty)

(As Against Mr. Babineau)

57.     Plaintiff repeats and adopts the above paragraphs of this Complaint as though fully set forth herein.

58.     As alleged above, Mr. Kim and Mr. Babineau entered into a joint venture/partnership to develop Second Measure as a business for commercial purposes.  As a joint venturer/partner of the joint venture/partnership, Mr. Babineau at all times owned Mr. Kim the fiduciary duties of disclosure, loyalty, and care.  Pursuant to such fiduciary duties, Mr. Babineau was required to act in the utmost good faith towards Mr. Kim and to avoid acts and omissions adverse to Mr. Kim.  By virtue of this fiduciary relationship, Mr. Kim reposed trust and confidence in the integrity of Mr. Babineau.  Mr. Kim provided no cause for Mr. Babineau to act in any manner inconsistent with this fiduciary relationship.

59.     Mr. Babineau breached his fiduciary duty, including the duties of disclosure, loyalty, and care to Mr. Kim by engaging in the acts and omissions alleged above.

60.     Mr. Babineau intended to induce Mr. Kim to rely on their fiduciary relationship, and in reasonable reliance thereon, Mr. Kim was induced to and did continue his fidelity.

61.     As a direct and foreseeable result of these breaches of fiduciary duty by Mr. Babineau, Mr. Kim has sustained damages in an amount according to proof within the jurisdiction of this Court.

62.     The aforementioned conduct was intentional on the part of the Mr. Babineau, to thereby deprive Mr. Kim of property and legal rights and otherwise cause injury, and was despicable conduct that subjected Mr. Kim to cruel and unjust hardship and oppression in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages.

### Seventh Cause of Action

(Conversion)

(As Against Mr. Babineau, Ms. Chou, and Second Measure)

63.    Mr. Kim repeats and adopts the above paragraphs of this Complaint as though fully set forth herein.

64.    Mr. Kim, as a joint venturer/partner of the joint venture/partnership owned, possessed and/or was entitled to immediate possession at the time of conversion to his share of the personal property, assets, and profits in a sum capable of identification of the joint venture/partnership, including his specialized and proprietary financial knowledge, and all income derived therefrom.

65.    Mr. Babineau, Ms. Chou, and Second Measure have intentionally taken possession of, transferred, and/or prevented Mr. Kim from having access to the joint venture/partnership's personal property, profits, and/or assets, for a significant period of time.

66.    Mr. Kim did not consent to Mr. Babineau, Ms. Chou, or Second Measure's actions.

67.    As a result of the conversion by Mr. Babineau, Ms. Chou, and Second Measure, Mr. Kim has suffered damage and lost profits in a sum capable of identification in an amount according to proof within the jurisdiction of this Court.

68.    The conduct of Mr. Babineau, Ms. Chou, and Second Measure was a substantial factor in causing Mr. Kim's harm.

69.    The aforementioned conduct was intentional on the part of Mr. Babineau, Ms. Chou, and Second Measure, to thereby deprive Mr. Kim of property and legal rights and otherwise cause injury, and was despicable conduct that subjected Mr. Kim to cruel and unjust hardship and oppression in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Defendant and Counterclaim Plaintiff Steven Kim prays for judgment against Counterclaim Defendants, and each of them, as follows:

1. For compensatory damages, according to proof;

2. For the recovery of his one-half interest in the joint venture/partnership, and all profits and benefits arising therefrom;

3. For interest to the extent permitted by law;

4. For an award of exemplary and punitive damages; and

5. For such other and further relief as the Court may deem proper.

**DEFENDANT/COUNTERCLAIM PLANTIFF STEVEN KIM DEMANDS A JURY**.

DATED:  August 3, 2015     LAW OFFICES OF SAM DAWOOD


             By:  *--Sam N. Dawood--*
_____

                Sam N. Dawood

             Attorneys for Defendant
             STEVEN KIM