UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SECOND MEASURE, INC.,

        Plaintiff,

    v.

STEVEN KIM,

        Defendant.

Case No.  15-cv-03395-JCS

**ORDER DENYING COUNTERCLAIM DEFENDANT SECOND MEASURE, INC.'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6), AND, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT PURSUANT TO FRCP 12(e)**

Re: Dkt. No. 11, 19

## I.     INTRODUCTION

Plaintiff Second Measure, Inc. ("Second Measure") brought this action against Defendant Steven Kim in San Mateo County Superior Court, seeking a declaration that Kim does not have an equity interest in Second Measure, along with other relief.  Compl. (dkt. 1, Ex. A) at 5–6.  On July 23, 2015, Kim removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  Def's Notice of Removal (dkt. 1) at 2.  On August 3, 2015, Kim filed an Answer and Counterclaims, asserting counterclaims against Second Measure and its official corporate founders, Michael Babineau and Lillian Chou (collectively, the "Counterclaim Defendants").  Dkt. 7 at 16–21, ¶¶ 25–69.  The counterclaims are based on allegations that Second Measure was created as a result of a partnership or joint venture between Kim and Babineau and that Babineau wrongfully shut Kim out of the partnership or joint venture.  *Id.* at 11–15, ¶¶ 10–24.

On August 28, 2015, Second Measure filed a Motion to Dismiss Pursuant to Rule 12(b)(6) and Alternative Motion for a More Definite Statement (the "Motion," dkt. 11), and Babineau and Chou filed a Notice of Joinder in the Motion.  Dkt. 19.  The Court held a hearing on the Motion on

Friday, November 6, 2015, at 9:30 a.m.  For the reasons stated below, the Motion is DENIED.[1]

## II.    BACKGROUND

### A.    Factual Background

The parties present conflicting factual histories about Kim's role in the founding of Second Measure, but the parties appear to agree on the following general timeline.  In September of 2013, Kim and Babineau discussed a business plan related to analyzing datasets on credit card spending to generate profits for investors.  Answer to Complaint and Counterclaims ("Answer and Counterclaims," dkt. 7) at 11, ¶ 12; Compl. ¶¶ 7–8.  By late September of 2014, any role that Kim had in founding a company with Babineau based on this plan had ended.  Answer & Countercl. at 15, ¶ 23; Compl. ¶¶ 13–16.  At some point after September of 2014, Babineau and Chou incorporated Second Measure to "build tools and services designed to leverage consumer spending data for the ultimate benefit of hedge funds and other investors."  Compl. ¶ 4; Answer & Countercl. at 15, ¶ 24.  Beyond this general timeline, the parties offer conflicting characterizations of Kim's relationship with Babineau and Second Measure.

According to Kim, around September of 2013, he and Babineau entered into an oral agreement to develop a business as a joint venture or partnership based on the plan they had discussed.  Answer & Countercl. at 12–13, ¶ 14.  Under this agreement, Kim and Babineau were to have equal ownership, equal profit interests, and equal control in the management of the business.  *Id.*  Kim—who has worked as an investor—was to lead the business side of the enterprise, and Babineau—who is a computer engineer—was to lead the technical side.  *Id.* at 11–13 ¶¶ 11, 13, 14.  They initially planned to call their business "Recon" but later agreed change the business's name to "Second Measure."  *Id.* at 12–13, ¶ 14.

The Answer and Counterclaims describes how Kim and Babineau worked to develop the business together over the next year.  *Id.* at 13–15, ¶¶ 15–20.  They worked long hours together, organizing the datasets on which their business was based.  *Id.* at 13–14, ¶¶ 16–17.  They split costs for business expenses, and Babineau sought Kim's approval for computer server-related

_____

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

expenses. *Id.* at 14, ¶ 18. And they signed tandem non-disclosure agreements with a data provider to acquire consumer spending datasets. *Id.* at 13, ¶ 15.

According to Kim's allegations, Babineau and Kim were still working together to develop the business in September of 2014. *Id.* at 14–15, ¶ 20. As specific examples of their continued coordination in the fall of 2014, Kim quotes two emails he received from Babineau. In an email dated September 11, 2014, Babineau allegedly wrote to Kim, "Right now it doesn't feel we are maximizing our chances for success. How can we be better as a team?" *Id.* In an email sent the following day, Babineau allegedly wrote, "I want us to be back on the same page! Let's get this shit figured out and get rich together." *Id.*

At some point in 2014, Chou, who was Babineau's girlfriend, became involved with the business. *Id.* at 14, ¶ 19. While she was initially included to help Babineau with the technical side of the business, Kim alleges that she and Babineau "formed an undisclosed intent to eventually wrongfully exclude [Kim] from the joint venture/partnership." *Id.* at 14–15, ¶¶ 21, 19. In late September of 2014, Babineau and Chou shut Kim out of the business by blocking his access to their servers, applications, and Kim's prior work product. *Id.* at 15, ¶ 23. Kim alleges that the Counterclaim Defendants later offered to hire him as a consultant with a small equity share in the business to settle the dispute, but Kim rejected the offer. *Id.* Finally, Kim alleges that Babineau and Chou incorporated Second Measure as their own business and that the company has received seed investments in exchange for equity shares. *Id.* at 15, ¶ 24.

Second Measure offers a different story.[2] According to Second Measure, Kim and Babineau began discussing the possibility of a business venture after Kim introduced Babineau to Zafar Jafri, a financial research analyst, in July of 2013. Compl. ¶¶ 7–8. Jafri had access to large consumer spending datasets and wanted to trade based on trends in those datasets. *Id.* ¶ 7. After the introduction, Babineau and Jafri discussed potential solutions to some technical issues involving the datasets. *Id.*

---

[2] For the purposes of Second Measure's Motion to Dismiss, the Court accepts Kim's factual allegations as true. The Court presents Second Measure's allegations to provide a more complete representation of the record and because the factual allegations provide background for Second Measure's legal position in this Motion.

3

In September of 2013, Babineau and Kim discussed the possibility of forming a business using Jafri's ideas, but Second Measure claims that there was no agreement to form a business, to split equity in a business, or to assign intellectual property to a business.  *Id.* ¶¶ 8, 10, 11.  Instead, the Complaint alleges that Babineau and Kim were merely "evaluat[ing] the possibility of forming a business."  *See id.* ¶¶ 10, 12, 13.

Second Measure alleges that Chou became involved with the business in October of 2013. Second Measure further alleges that by March of 2014, Kim had "terminated his involvement with the business evaluation" because the three were unable to secure a continued agreement with their data provider and because Kim moved from California to Texas.  *Id.* ¶ 12.  From that point on, Kim "showed no interest in continuing to evaluate the business . . . [or] work[ing] with Babineau and Chou to form a definite business built on the concept they were evaluating."  *Id.* ¶ 13.

Second Measure claims that the only agreement to form a business occurred between Babineau and Chou in August of 2014 and that Kim declined to participate.  *Id.*  After making this decision, Babineau and Chou "start[ed] anew" by discarding all code developed prior to September of 2014, and they began work on their new business, "wiped clean of any input from Kim."  *Id.* ¶¶ 14–15.  It was this new business that Babineau and Chou incorporated as "Second Measure, Inc." in January of 2015.  *Id.* ¶¶ 15, 4.

Around January of 2015, Second Measure claims it offered Kim a consulting position in exchange for an 8% equity interest in Second Measure to vest over four years.  *Id.* ¶ 16.  In the role, Kim was supposed to advise the company based on his financial expertise and introduce the company to potential clients and investors.  *Id.*  Second Measure claims that Babineau and Kim entered into an oral agreement on these terms.  *Id.*  However, Second Measure alleges that Kim never performed the consulting services on which he and Babineau had agreed.  *Id.* ¶ 17.

**B.    Procedural History**

On March 11, 2015, attorney Don Buder sent a letter to Babineau stating that Buder had been retained by Kim to represent Kim in connection with his equity interest in Second Measure. Compl., Ex. 1.  The letter states that Kim has a "substantial equity interest" in the company.  *Id.* The letter further advises Babineau that he has a fiduciary duty to Kim and should be aware of

United States District Court
Northern District of California

4

United States District Court
Northern District of California

Kim's equity interest when making representations about Second Measure's capital stock. *Id.* In response to the letter, Second Measure filed a complaint in the San Mateo County Superior Court on June 4, 2015, seeking judicial declarations that Kim has no equity interest in Second Measure and that Second Measure's directors and officers have no fiduciary duty to Kim. Compl. at 6. The Complaint also seeks monetary damages for Kim's breach of the oral consulting agreement he allegedly entered into with Babineau. *Id.*

Kim removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332 on July 23, 2015. Notice of Removal at 1. The Notice of Removal states that complete diversity exists because Kim is a citizen of Texas and Second Measure is a Delaware corporation with its principal place of business in California. *Id.* ¶¶ 7–8. Kim argues that the amount-in-controversy requirement is satisfied because his 50% equity interest in Second Measure is worth more than $75,000. *Id.* ¶ 10. Kim has included a declaration in support of removal in which he states "on information and belief that the current valuation of Second Measure exceeds $160,000." *Id.*, Kim Decl. ¶ 2.

On August 3, 2015, Kim filed an Answer to Complaint and Counterclaims. Dkt. 7. The Answer and Counterclaims denies Second Measure's characterization of the facts and right to relief and asserts a number of affirmative defenses. *Id.* at 2–8. The pleading asserts a counterclaim of conversion against Second Measure, Babineau, and Chou, alleging that the Counterclaim Defendants have wrongfully taken company property, assets, and profits to which Kim was entitled (Counterclaim 7). *Id.* at 21, ¶¶ 63–69. The pleading also asserts five counterclaims against Babineau based on Babineau's alleged breach of an agreement to conduct business with Kim: breach of express joint venture agreement (Counterclaim 1), breach of implied joint venture agreement (Counterclaim 2), breach of express partnership agreement (Counterclaim 3), breach of implied partnership agreement (Counterclaim 4), and breach of fiduciary duty (Counterclaim 5).[3] *Id.* at 16–20, ¶¶ 25–62.

Second Measure filed the instant Motion on August 28, 2015, seeking dismissal of all six

---

[3] The Answer and Counterclaims does not include a "Counterclaim 6."

of Kim's counterclaims under Rule 12(b)(6) for failure to state a claim on which relief may be granted. Mot. at 6.

### C. Parties' Arguments

#### 1. Second Measure's Motion

In its Motion, Second Measure seeks dismissal of all of Kim's counterclaims based on four main arguments. Mot. at 10–15. First, Second Measure contends that each counterclaim depends upon the existence of a joint venture or partnership, yet the Answer and Counterclaims fails to adequately plead the existence of either. *Id.* at 10–11. According to Second Measure, the pleading is deficient because it fails to allege specific facts as to the usual indicia of a partnership or joint venture under California law: co-ownership of property, sharing of gross returns, and sharing of business profits. *Id.* at 10 (citing Cal. Corp. Code § 16202(c)). Second Measure further argues that the sharing of business profits is the only indicium of the existence of a partnership that leads to a presumption of the partnership's existence, so the pleading's omission of any allegations regarding the sharing of business profits indicates that no partnership or joint venture existed. *Id.* at 10 (citing Cal. Corp. Code § 16202(c)(3)).

Under its first argument, Second Measure contends that Counterclaims 1–4—for breach of an express or implied joint venture or partnership agreement—must be dismissed because Kim fails to adequately plead the existence of any such agreement. *Id.* at 11. Second Measure contends that Counterclaim 5, for breach of fiduciary duty, also must be dismissed because Babineau did not owe Kim a fiduciary duty in the absence of a joint venture or partnership agreement. *Id.* Finally, Second Measure argues that Counterclaim 7, for conversion, must be dismissed because Kim fails to allege the existence of a partnership or joint venture, so there was no partnership or joint venture property for the Counterclaim Defendants to convert. *Id.*

Second Measure next argues that before asserting counterclaims against Babineau arising out of any joint venture or partnership—assuming one existed—California law requires Kim to seek a dissolution of the joint venture or partnership and an accounting. *Id.* at 11–12 (citing *Stodd v. Goldberger*, 73 Cal. App. 3d 827, 837 (1977), and *Corrales v. Corrales*, 198 Cal. App. 4th 221, 228 (2011)). Only after such a procedure, Second Measure contends, is it possible to determine

6

the true standing of the parties and whether or not the defendant partner is indebted to the plaintiff partner. *Id.* at 12.  Because Kim did not seek dissolution and an accounting, Second Measure contends that the counterclaims against Babineau should be dismissed. *Id.*  Second Measure further argues that if Kim seeks dissolution and an accounting, the procedure may reveal that any property belonging to the partnership or joint venture must be distributed to creditors, thus showing that there was no property for the Counterclaim Defendants to convert. *Id.*

Third, Second Measure argues that any partnership or joint venture created by Babineau and Kim dissolved in September of 2014, after which point Babineau was free to continue in the same line of business. *Id.* at 12–13.  That is, because Kim does not allege that he and Babineau formed a partnership for a definite term, either one was free to withdraw and dissolve the relationship at any time. *Id.* at 13.  Second Measure argues that Kim's allegations describe such a withdrawal from the partnership by Babineau in September of 2014. *Id.*  According to Second Measure, California has a policy in favor of unrestrained competition and California courts have recognized a partner's right to continue in the same line of business after withdrawal and dissolution. *Id.* (citing *Miller v. Hall*, 65 Cal. App. 2d 200, 204 (1944)).  Accordingly, Second Measure argues that Counterclaims 1–5 must be dismissed because Babineau's fiduciary duties and obligation not to compete with Kim ended with his withdrawal from the partnership or joint venture in September of 2014, before the breaches alleged in Counterclaims 1–5. *Id.*

Finally, Second Measure argues that Kim has not adequately pled that the partnership or joint venture owned any property, so Kim's counterclaims fail to the extent they rely on misappropriation of property belonging to the joint venture or partnership. *Id.* at 13–15.  Second Measure makes two points under this argument.  First, Second Measure contends that partners acting in their individual capacities presumptively acquire property as separate property, and Kim's allegations do not rebut this presumption by pleading that any property belongs or was transferred to the partnership or joint venture. *Id.*

Next, Second Measure contends that to the extent that Kim contributed a business idea to the partnership or joint venture, the business idea is too abstract and generic to be protectable property. *Id.* at 14–15.  Even if the business idea were protectable property, Second Measure

United States District Court
Northern District of California

7

argues that Babineau was entitled to an equal, undivided interest in the idea upon dissolution.  *Id.* According to Second Measure, the inadequate pleading of partnership or joint venture property requires dismissal of all of the counterclaims.  *Id*. at 15.  That is, Second Measure argues that Counterclaims 1–5 must be dismissed because Babineau had a right to any partnership or joint venture property upon dissolution, and Counterclaim 7 must be dismissed because Kim failed to identify any partnership or joint venture property that the Counterclaim Defendants could have converted.  *Id.*

In the alternative to granting Second Measure's Motion to Dismiss, Second Measure asks the Court to grant its Motion for a More Definite Statement under Rule 12(e).  *Id.* at 15–16.  In support of this request, Second Measure argues that the pleading lacks sufficient specificity with respect to the formation of the partnership or joint venture, the property owned by that entity, and the property that was allegedly misappropriated.  *Id.* at 16.

On August 28, 2015—the same day Second Measure filed the instant Motion—Babineau and Chou filed a Notice of Joinder in Second Measure's Motion.  Dkt. 19.  The one-paragraph Notice of Joinder requests that any relief ordered in favor of Second Measure also be ordered in favor of Babineau and Chou.  *Id*. at 2.

### 2. Kim's Opposition

In his Opposition, Kim responds to Second Measure's first three arguments.  Opp'n (dkt. 25) at 6–11.  First, according to Kim, it is not appropriate for the Court to address whether a joint venture or partnership was formed on a motion under Rule 12(b)(6) because this is a fact-specific inquiry that requires development of the record.  *Id.* at 6–7.  Kim argues that the cases cited by Second Measure actually support this position to the extent that none of them were decided on a motion to dismiss.  *Id.* at 7.  Kim cites *Sacramento H.D.M. v. Hynes Aviation Industries, Inc.* to support his position that he alleges sufficient facts as to the existence of a partnership or joint venture under California law to survive a motion to dismiss on this issue.  Opp'n at 7–8 (citing 965 F. Supp. 2d 1141 (E.D. Cal. 2013)).

Second, Kim argues he is not required to seek dissolution of the partnership or joint venture and an accounting as a prerequisite for bringing this lawsuit.  Opp'n at 9–10.  Kim

United States District Court
Northern District of California

8

United States District Court
Northern District of California

contends that the cases cited by Second Measure on this point, including *Corrales v. Corrales*, recognize an exception to the accounting requirement where one partner has wrongfully destroyed the partnership and converted it to his own use. *Id.* (citing 198 Cal. App. 4th 221 (2011)). Kim contends that his counterclaims fall within the scope of this exception because he alleges that Babineau shut him out of the partnership business and wrongfully expropriated the entire business for himself. *Id.* at 9.

Third, Kim argues that Babineau was not entitled to compete in the same line of business after September of 2014 because Babineau did not merely withdraw from the business. *Id.* at 10. Rather, according to Kim, the Answer and Counterclaims alleges that Babineau wrongfully expropriated the business for himself and wrongfully excluded Kim from the joint venture or partnership. *Id.* at 10–11. Even if he did withdraw, Kim argues that Babineau's conduct was wrongful under *Leff v. Gunter*, in which the California Supreme Court held that a joint venturer may not withdraw from a joint venture in order to expropriate a business opportunity for himself or herself. Opp'n at 10–11 (citing 33 Cal. 3d 508 (1983)).

With respect to Second Measure's final argument—that Kim fails to sufficiently allege that the joint venture or partnership owned property—the Opposition offers only a partial response. *See* Opp'n at 12. Here, the Opposition does not directly address the assertion that there are no allegations of partnership property. *See id.* Instead, Kim argues that it is inappropriate to resolve issues about who is entitled to partnership property on a motion to dismiss. *Id.* Finally, Kim argues that to the extent the Answer and Counterclaims is deficient, he should be granted leave to amend. *Id.* at 12–13.

Along with his Opposition to the Motion, Kim filed an Opposition to the Notice of Joinder filed by Babineau and Chou. Dkt. 23. According to the Opposition, the Notice of Joinder fails to state "how the arguments made by Second Measure in its Motion to Dismiss are applicable to Babineau, Chou, or both," which makes it "impossible for [Kim] to meaningfully respond." *Id.* at 1.

### 3.  Second Measure's Reply

The reply brief—filed by all three Counterclaim Defendants—first argues that Kim's

allegations are insufficient with respect to the existence of a partnership or joint venture because the allegations are not plausible. Reply (dkt. 26) at 3–4. That is, the Counterclaim Defendants argue it is implausible "that the parties agreed to form either a joint venture, or a partnership, but did not care to commit to a single type of entity." *Id.* at 4.

Second, the Counterclaim Defendants contend that Kim's allegations do not fall within the exception to the accounting requirement that Kim cited in his Opposition. *Id.* at 4–6. The Counterclaim Defendants agree that the exception exists under California law but argue that the exception does not apply because Babineau did not convert *all* of the assets from the partnership or joint venture to his own use. *Id.* Here, Second Measure's position is that "Babineau could not have converted [Kim's] Business Idea for his sole use," so he could not have converted *all* of the assets to his own use. *Id.* at 5 (citing *Corrales v. Corrales*, 198 Cal. App. 4th 221, 228 (2011)).

Third, the Counterclaim Defendants argue that Babineau could indeed have dissolved the partnership and continued in the same line of business. *Id.* at 6–7. They argue that *Leff v. Gunter* is distinguishable because *Leff* dealt with a joint venture that persisted after one member withdrew, while the purported partnership or joint venture in this case would have dissolved after Babineau's withdrawal because a partnership or joint venture requires more than one partner. *Id.*

Finally, the Counterclaim Defendants reframe their argument about the pleading's allegations with respect to partnership property. *Id.* at 7. Whereas the Motion argues that Kim alleges no property to misappropriate, the Reply argues that the absence of allegations of partnership property shows that Kim suffered no damages. *Id.*

The Counterclaim Defendants also address Kim's opposition to the Notice of Joinder. They argue that joinder in the Motion is appropriate because the Motion seeks a ruling that all of Kim's counterclaims are fatally defective as to all Counterclaim Defendants, so there are no arguments or types of relief that are specific to Second Measure alone. *Id.* at 8.

## III.    ANALYSIS

### A.    Legal Standards

#### 1.  Motion to Dismiss under Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which

United States District Court
Northern District of California

relief can be granted.  FED. R. CIV. P. 12(b)(6).  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a).

In ruling on motions to dismiss under Rule 12(b)(6), courts "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 570).

### 2.  Motion for a More Definite Statement under Rule 12(e)

Rule 12(e) states that a party may move for a more definite statement of a pleading "so vague or ambiguous" that the responding party cannot reasonably prepare a response.  FED. R. CIV. P. 12(e).  The motion "must point out the defects complained of and the details desired."  *Id.* However, the purpose of a Rule 12(e) motion is to attack unintelligibility, not simply lack of detail.  *Velasquez v. HSBC Fin. Corp.*, No. 08-4592 SC, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009).  Thus, where the detail sought is obtainable through discovery, the motion should be

1    denied.  *Id*.  A Rule 12(e) motion is "proper only where the complaint is so indefinite that the

2    defendant cannot ascertain the nature of the claim being asserted and therefore cannot reasonably

3    be expected to frame a proper response."  *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*,

4    805 F. Supp. 2d 888, 896 (N.D. Cal. 2011).

5        **B.    Joinder in the Motion**

6        Although the manner in which the various Counterclaim Defendants raise the issues in

7    their Motion is somewhat awkward, the result is clear: the Counterclaim Defendants challenge all

8    claims on the bases raised in Second Measure's Motion.  Accordingly, the Court will allow the

9    joinder and rule on the merits of the arguments raised as to all Defendants named in each

10   counterclaim.

11       **C.    Second Measure's Motion to Dismiss**

12           **1.   Breach of Express Joint Venture Agreement and Breach of Express**
               **Partnership Agreement (Counterclaims 1 and 3)**

13

14               a.   Relevant Substantive Law

15       California law defines a partnership as "the association of two or more persons to carry on

16   as co-owners a business for profit . . . whether or not the persons intend to form a partnership."

17   Cal. Corp. Code § 16202(a).  Similarly, a joint venture is "an undertaking by two or more persons

18   jointly to carry out a single business enterprise for profit."  *Weiner v. Fleischman*, 54 Cal. 3d 476,

19   482 (1991).  "From a legal standpoint, both relationships are virtually the same," so "courts freely

20   apply partnership law to joint ventures when appropriate."  *Id*.  Either relationship may be formed

21   orally.  *Id*; *see also* Cal. Corp. Code § 16101(10) ("'Partnership agreement' means the agreement,

22   whether written, oral, or implied, among the partners concerning the partnership . . . .").  The

23   existence of a partnership or joint venture is a question of fact determined by a preponderance of

24   the evidence.  *Weiner*, 54 Cal. 3d at 490.

25       To adequately plead a claim for breach of contract under California law, a plaintiff must

26   allege "a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and

27   damage to plaintiff resulting therefrom."  *McKell v. Wash. Mut., Inc*., 142 Cal. App. 4th 1457,

28   1489 (2006).  The party asserting breach of contract must plead "whether the contract is written, is

United States District Court
Northern District of California

United States District Court
Northern District of California

1    oral, or is implied by conduct." Cal. Code Civ. Proc. § 430.10. For breach of a partnership or

2    joint venture, the plaintiff must further allege an agreement to participate in the management of the

3    business. *See Kaljian v. Menezes*, 36 Cal. App. 4th 573, 586 (1995), *as modified on denial of*

4    *reh'g*, (Aug. 3, 1995) ("An essential element of a partnership or joint venture is the right of joint

5    participation in the management and control of the business."). However, a plaintiff need not

6    allege further formalities, such as sharing of profits and losses, because the existence of a

7    partnership is determined from "the intent of the parties revealed in the terms of their agreement,

8    conduct, and the surrounding circumstances." *See Holmes v. Lerner*, 74 Cal. App. 4th 442, 454

9    (1999), *as modified*, (Sept. 7, 1999).

10

11                      b.   Whether the Counterclaim Adequately Alleges the Formation of a Joint
                             Venture or Partnership by Express Agreement

12           Counterclaims 1 and 3 adequately allege that Kim and Babineau formed a joint venture or

13   partnership by express agreement. Kim alleges that around September of 2013, he and Babineau

14   agreed to form an association as partners or joint venturers. Answer & Countercl. at 12–13, ¶¶

15   13–14. Kim alleges that they agreed on a division of business responsibilities. *Id.* at 12, ¶ 13. He

16   alleges that they entered into an "explicit oral agreement" that "each of them would have 1/2

17   ownership and profit interests." *Id.* at 12–13, ¶¶ 14. Kim alleges that they later agreed to have

18   "equal say in the control of the management of the joint venture/partnership." *Id.* And Kim

19   alleges that in the subsequent months, they worked long hours together, split business costs, and

20   discussed whether to incur certain business expenses. *Id.* at 13–14, ¶¶ 16–18. Because a joint

21   venture or partnership may be formed orally under California law, these allegations are sufficient

22   to plead that Kim and Babineau formed a joint venture or partnership by their express oral

23   agreement and subsequent collaboration. *See*, *e.g.*, *Sacramento E.D.M., Inc. v. Hynes Aviation*

24   *Indus., Inc.*, 965 F. Supp. 2d 1141, 1150 (E.D. Cal. 2013) (finding the allegations "sufficient to

25   plead the existence of a partnership" under California law, where the plaintiff alleged the

26   defendant had orally agreed to conduct business together, share profits, provide operating capital,

27   and assume some control over the business).

28           Second Measure argues that there are two deficiencies in Kim's allegations about the

13

formation of a joint venture or partnership by express agreement between Babineau and Kim. First, in its Motion, Second Measure contends the pleading is deficient because it fails to allege the usual indicia of the existence of a partnership: co-ownership of property, sharing of gross returns, and sharing of business profits. Mot. at 10–11. The presence or absence of any of these indicia is not dispositive as to whether a joint venture or partnership was actually formed however. *See Holmes*, 74 Cal. App. 4th at 454. Instead, the existence of a joint venture or partnership depends on the overall set of facts and circumstances about the business relationship. *See Weiner*, 54 Cal. 3d at 482–83; *Holmes*, 74 Cal. App. 4th at 454.

In its Reply, Second Measure argues that Kim fails to plead sufficient *plausible* facts to establish that he and Babineau formed a joint venture or partnership by express oral agreement. Reply at 3–4. Second Measure asserts that it is implausible that "the parties agreed to form either a joint venture, or a partnership, but did not care to commit to a single type of entity." *Id.* at 4. However, the California Supreme Court has stated that the distinction between partnerships and joint ventures is "not sharply drawn" and that the legal consequences of both relationships "are virtually the same." *Weiner*, 54 Cal. 3d at 482. Given the near identity of the two business relationships, it is plausible that Kim and Babineau would agree to form a joint venture or partnership without committing to a single form of relationship.

Accordingly, Counterclaims 1 and 3 adequately allege that a joint venture or partnership was formed by an express agreement between Kim and Babineau. Counterclaims 1 and 3 also allege the remaining required elements for claims of breach of joint venture agreement and breach of partnership agreement—namely, that Kim performed his duties under the agreement, that Babineau breached the agreement, and that Babineau's breach caused damages to Kim. *See* Answer & Countercl. at 15–18, ¶¶ 23, 24, 27–31, 43–47.

### c.   Whether Kim Must Seek a Dissolution and Accounting as a Prerequisite to Asserting Counterclaims 1 and 3

Historically, one partner could not sue another for claims related to the partnership business without first seeking a dissolution and accounting. *See, e.g., Hosking v. Spartan Props., Inc.*, 275 Cal. App. 2d 152, 156 (1969). The rationale for the accounting requirement was "that it

is ordinarily impossible to determine whether or not the defendant partner is in fact indebted to the plaintiff partner until the partnership accounts are settled and the true standing of the parties has been ascertained." *Id*. at 156–57 (quotation omitted).  The accounting requirement was subject to several exceptions, including "where one partner excludes the other, repudiates the very existence of the partnership and converts all of the partnership assets." *Gherman v. Colburn*, 72 Cal. App. 3d 544, 557 (1977).  The rationale for this exception was that settling partnership accounts is not required where "the guilty partner has breached (*i.e.* repudiated) the basic agreement which created the partnership [and] denies the very existence of a partnership." *See id.* at 558.

However, California eliminated the accounting requirement when it enacted the Revised Uniform Partnership Act ("CRUPA") in 1996.  Subsection 16405(b) of the Corporations Code[4] now provides:

> (b) A partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business, to do any of the following:
>
> (1) Enforce the partner's rights under the partnership agreement.
>
> (2) Enforce the partner's rights under this chapter, including all of the following:
>
> . . . .
>
> (3) Enforce the rights and otherwise protect the interests of the partner, including rights and interests arising independently of the partnership relationship.

In Counterclaims 1 and 3, Kim seeks to enforce his rights under the partnership or joint venture agreement.  Section 16405(b) thus permits Kim to bring these counterclaims "with or

---

[4] The comments to subsection 405(b) of the Revised Uniform Partnership Act—which uses substantially identical language to subsection 16405(b) of CRUPA—show that this provision changes the prior common law rule.  *See* REVISED UNIF. P'SHIP ACT § 405 cmt. 2 (2015–16 ed.) ("Under RUPA, an accounting is not a prerequisite to the availability of the other remedies a partner may have against the partnership or the other partners. . . . Under subsection (b), a partner may bring a direct suit against the partnership or another partner for almost any cause of action arising out of the conduct of the partnership business. That eliminates the present procedural barriers to suits between partners filed independently of an accounting action."); *see also* 9 Witkin, Summary of California Law 10th (2005) P'ship, § 34 ("At one time, a partner had to sue other partners in equity for dissolution and accounting in order to enforce partnership rights. . . . [CRUPA] takes a significantly different approach. A partner may sue another partner for legal or equitable relief, with or without an accounting regarding partnership business . . . .").

1    without an accounting." *See Schnabel v. Lui*, 302 F.3d 1023, 1030 (9th Cir. 2002) (Under Section

2    16405(b), "[r]elief is available against another partner for an accounting, enforcement of rights

3    under the partnership agreement, dissolution, and to enforce other rights of a partner arising under

4    the code or for rights independent of the partnership agreement.").

5        The parties do not discuss section 16405 in their briefs, but Second Measure cites *Corrales*

6    *v. Corrales*, 198 Cal. App. 4th 221 (2011), in support of its assertion that Kim is required to seek

7    dissolution and an accounting.  Even though *Corrales* was decided after CRUPA, the court in

8    *Corrales* applied the earlier common law accounting requirement rather than section 16405 and

9    reached a result that is inconsistent with section 16405.  *See* ALLEN DONN ET AL., REVISED

10   UNIFORM PARTNERSHIP ACT § 405, Authors Comments n.9 (updated 2015) ("*Corrales v. Corrales*

11   . . . is inconsistent with § 405(b).").  Nevertheless, even if *Corrales* is an accurate statement of

12   California law, *Corrales* does not require a different outcome here.  This is because the *Corrales*

13   court recognized the common law exception to the accounting requirement, and the allegations of

14   Counterclaims 1 and 3 fall within this exception.  *See Corrales*, 198 Cal. App. 4th at 228–29.

15       In *Corrales*, two brothers—Richard and Rudy Corrales—formed a partnership to run an

16   electronics repair business.  *Id.* at 224.  Several years later, Richard learned that Rudy had secretly

17   formed a competing business offering the same services, and Richard sent Rudy a notice that he

18   was withdrawing from the partnership.  *Id.* at 224–25.  Richard brought a lawsuit against Rudy,

19   including a claim for breach of fiduciary duty.  *Id.* at 228–29.  While the trial court concluded that

20   Rudy had breached a fiduciary duty by forming a competing business while the partnership still

21   existed, the trial court also found that Richard failed to prove any damages from the breach.  *Id.* at

22   228.

23       On appeal, the court held that Richard was not entitled to damages for this breach of

24   fiduciary duty because one partner cannot sue another based on partnership business until there

25   has been a dissolution and accounting.  *Id.* at 228.  The court stated that the common law

26   exception to the accounting requirement permits a lawsuit where one partner "wrongfully

27   destroys" the partnership and "converts to his own use its entire assets."  *Id.*  But the court found

28   that this exception did not apply because Richard and Rudy had continued to run the partnership

together while Rudy developed the competing business, so Rudy had not destroyed the partnership or converted the partnership assets to his sole use. *Id.* at 229. Instead, Richard had terminated the partnership by sending Rudy a notice of withdrawal. *Id.*

In contrast to the facts of *Corrales*, Kim's counterclaims would fall within the exception to the accounting requirement. Kim does not allege that he dissociated or withdrew from the partnership, as the plaintiff partner had in *Corrales*. *See id.* at 224–25. Rather, he alleges that Babineau and Chou "wrongfully and physically shut [him] out of the joint venture/partnership." Answer & Countercl. at 15, ¶ 23. Unlike in *Corrales*, where the brothers continued to run the original business together, the Answer and Counterclaims alleges that Babineau and Chou deprived Kim of access to their servers and applications—effectively excluding Kim from the business and converting the business assets to their exclusive use. *See id.* Instead, Kim's allegations more closely match those cases in which courts have applied the common law exception to the accounting requirement. *See, e.g.*, *Gherman v. Colburn*, 72 Cal. App. 3d 544, 556 (1977) (applying the exception where the parties formed a joint venture to purchase, subdivide, and market property, and the defendants later denied entering into a joint venture with the plaintiffs and claimed the plaintiffs had no interest in the land); *Navarro v. Perron*, 122 Cal. App. 4th 797, 800 (2004) (stating that the exception would apply where the parties formed a partnership to purchase a duplex and the defendants later filed an unlawful detainer action against the plaintiff and denied the existence of a partnership).

With respect to this exception, Second Measure also argues that Babineau could not have converted Kim's business ideas to his sole use, so Babineau could not have converted *all* of the assets to his own use. Reply at 5. According to Second Measure, this makes the exception inapplicable because the exception applies only where one partner converts *all* of the assets to his sole use. *Id.* Second Measure's argument is incorrect. The common law exception exists to permit a lawsuit where one co-partner excludes the other from partnership business and claims the partnership never existed. *See Gherman*, 72 Cal. App. 3d at 557. This is the type of exclusion and appropriation that Counterclaims 1 and 3 allege. *See* Answer and Countercl. at 15–18, ¶¶ 23, 24, 28, 44. Accordingly, the Counterclaim Defendants have not shown that Kim was required to seek

United States District Court
Northern District of California

1    dissolution and an accounting as a prerequisite to Counterclaims 1 and 3.

3            d.   Whether Babineau Terminated the Joint Venture or Partnership in September of
             2014 and Subsequently Was Entitled To Compete

4            Under CRUPA, a partnership is dissolved "by the express will to dissolve and wind up the

5    partnership business of at least half of the partners." Cal. Corp. Code § 16801(1).  After

6    dissolution, a partnership continues "only for the purpose of winding up its business" and "is

7    terminated when the winding up of its business is completed." *Id.* § 16802(a).  Certain duties and

8    obligations between partners end at dissolution, whereas other duties continue until the partnership

9    business has been wound up.  For example, a partner's duty of loyalty "[t]o refrain from

10   competing with the partnership in the conduct of the partnership business" ends at "the dissolution

11   of the partnership." *Id.* § 16404(b)(3).  By contrast, a partner has a continuing duty of loyalty "[t]o

12   account to the partnership and hold as trustee for it any property, profit, or benefit derived by the

13   partner in the conduct and winding up of the partnership business or derived from a use by the

14   partner of partnership property or information, including the appropriation of a partnership

15   opportunity." *Id.* § 16404(b)(1).  A partner's duty of care similarly persists through the "winding

16   up of the partnership business." *Id.* § 16404(c).

17           A partner's continuing fiduciary duties prevent the partner from engaging in misconduct

18   related to the partnership dissolution.  For example, "[a] partner may not dissolve a partnership to

19   gain the benefits of the business for himself, unless he fully compensates his copartner for his

20   share of the prospective business opportunity." *Everest Investors 8 v. McNeil Partners*, 114 Cal.

21   App. 4th 411, 424–25 (2003) (quoting *Leff v. Gunter*, 33 Cal. 3d 508, 515 (1983)).  Similarly, "the

22   continuing fiduciary duty which survives dissolution of the partnership is breached if the ex-

23   partner attempts to divert partnership opportunities for his personal benefit to the detriment of his

24   former partners or when the remaining partners exclude the ex-partner from the benefits of an

25   existing partnership opportunity." *Crouse v. Brobeck, Phleger & Harrison*, 67 Cal. App. 4th

26   1509, 1551 (1998) (citations omitted).

27           On the issue of whether Babineau could have withdrawn from the joint venture or

28   partnership to compete, CRUPA reflects the same principle as the earlier cases on which the

United States District Court
Northern District of California

18

parties rely in their briefs: that one party may not withdraw from a joint venture or partnership to appropriate a partnership business opportunity.  For example in *Leff v. Gunter*, the defendants participated in a joint venture to develop a bid for a government contract, withdrew from the joint venture, and then submitted their own competing bid.  33 Cal. 3d 508, 511–13 (1983).  On appeal, the defendants challenged two jury instructions.  *Id.* at 513.  One instruction stated that a partner violates a fiduciary duty by secretly entering into a contract being sought by the partnership, and the other stated that a partner's fiduciary duty continues for as long as the partnership is negotiating for the contract.  *Id.* at 513.  The California Supreme Court held that the jury instructions correctly stated California law, under which "a partner's duty not to compete with his partnership with respect to a partnership opportunity which is actively being pursued by the partnership survives his withdrawal therefrom."  *Id.* at 514.

With respect to Counterclaims 1 and 3, Second Measure is correct that Babineau was free to withdraw from the partnership at any time, causing its dissolution.  *See* Mot. at 12–13. However, the Answer and Counterclaims does not allege that he did so.  Rather, the pleading alleges that Babineau wrongfully ousted and shut Kim out from the joint venture/partnership while retaining control of the business's information and property, thus breaching his agreement with Kim.  *See* Answer & Countercl. at 15, ¶¶ 23–24.  Accordingly, Second Measure's argument that Babineau was within his rights to withdraw from the partnership and compete with Kim fails because it contradicts the factual allegations of the Answer and Counterclaims.  *See* Mot. at 6; Answer & Countercl. at 15, ¶¶ 23–24.

Moreover, even if Babineau had withdrawn from the partnership in September of 2014, the ongoing obligations arising from his joint venture or partnership agreement would have prevented him from appropriating the business for himself, as Kim alleges that Babineau did.  *See* Answer & Countercl. at 15, ¶¶ 23–24.  Kim alleges that rather than winding up the partnership business and accounting for the profits and benefits to him, Babineau incorporated the partnership business as Second Measure and received seed investments.  *Id.* at 15, ¶ 24.  Thus, even if Babineau had withdrawn from the partnership in September of 2014, he was not subsequently entitled to engage in the conduct alleged against him, such as shutting Kim out of the business and continuing the

United States District Court
Northern District of California

business as his own.

     The cases cited by Second Measure do not stand for a contrary result.  For example, Second Measure cites *Miller v. Hall* for the proposition that "[i]n case of dissolution, each partner has a right to reengage in the same line of business, in the absence of an agreement to the contrary."  65 Cal. App. 2d 200, 204 (1944).  In *Miller*, a two-person partnership dissolved after one partner suffered a stroke, and the other partner represented to their clients that he would continue the same business under a new name.  *Id.* at 202.  The trial court found that the continuing partner "had appropriated . . . the business, records and good will of the partnership," and the trial court ordered that partner to account to the other for half the value of the business.  *Id.* at 203.  The appellate court affirmed, reasoning that if a business's information and reputation are "appropriated by one of the former partners for his own use and benefit he may be required to account to the other partner for his interest in any such value."  *Id.* at 205.  *Miller* thus shows that one party cannot dissolve and appropriate the business of a partnership without liability to the other partner.

     Second Measure also contends that *Leff v. Gunter* is "inapposite" because the joint venture in *Leff* persisted after the withdrawal of some partners, whereas Babineau's withdrawal from a partnership with Kim would have dissolved the partnership.  Reply at 6–7.  However, this distinction is immaterial because the court's reasoning in *Leff* was based on the "obvious and essential unfairness in one partner's attempted exploitation of a partnership opportunity for his own personal benefit and to the resulting detriment of his copartners," which exists whether or not the partnership persists.  33 Cal. 3d at 514.  Moreover, the court in *Leff* relied on *Page v. Page*, in which the court recognized the "continuing fiduciary obligation" of a partner who unilaterally dissolved a two-person partnership and tried to exclude his co-partner from a partnership business opportunity—precisely the situation in which Second Measure argues that Babineau had the right to pursue the same business.  *Id.* at 515 (citing *Page v. Page*, 55 Cal. 3d 192, 197 (1961)); Mot. at 13.

     Accordingly, even if Babineau had withdrawn from the partnership in September of 2014, he still would not have been permitted to subsequently appropriate joint venture or partnership

United States District Court
Northern District of California

1    business without breaching the obligations arising from the express agreements alleged in

2    Counterclaims 1 and 3.

3

4            e.    Whether the Answer and Counterclaims Adequately Alleges the Existence of
                   Partnership Property

5            Second Measure's final argument challenges the adequacy of Kim's allegations about

6    partnership property.  However, Second Measure frames the argument differently in the Motion

7    and the Reply.  The Motion argues that the allegations fail to show property that could have been

8    misappropriated, while the Reply argues that the allegations fail to show Kim has suffered any

9    damages.  Mot. at 15; Reply at 7–8.

10           Both theories apparently assume that the partnership was dissolved, which is an incorrect

11   characterization of the allegations.  See Mot. at 6–7, 13–15; Reply at 7–8.  As described with

12   respect to Babineau's continuing duties, the Answer and Counterclaims does not allege that

13   Babineau dissolved and terminated the partnership.  Instead, the pleading alleges that Babineau

14   wrongfully shut Kim out of the business while continuing to pursue the same business

15   opportunities.  See Answer & Countercl. at 15, ¶¶ 23–24.

16           Moreover, even if Babineau had dissolved the joint venture or partnership in September of

17   2014, Counterclaims 1 and 3 still allege that Kim suffered damages.  Once a joint venture or

18   partnership is terminated, "[e]ach partner is entitled to a settlement of all partnership accounts"

19   and "[t]he partnership shall make a distribution to a partner in an amount equal to any excess of

20   the credits over the charges in the partner's account."  Cal. Corp. Code § 16807.  If Babineau had

21   terminated the joint venture or partnership, Kim would have been entitled to a distribution based

22   on the business's assets and profits.  See id.  Kim alleges sufficient facts to support an inference

23   that the business actually possessed assets, such as purchased datasets, servers, and related

24   infrastructure, as well as investments in the company.  See Answer & Countercl. at 13–15, ¶¶ 15,

25   18, 23, 24.  In Counterclaims 1 and 3, Kim claims to be entitled to a share of the business's past

26   and present proceeds, as well as other relief.  Id. at 16–18, ¶¶ 28, 44.  Accordingly, Counterclaims

27   1 and 3 sufficiently allege that Kim suffered damages.  Second Measure's request to dismiss

28   Counterclaims 1 and 3 is therefore DENIED.

United States District Court
Northern District of California

### 2. Breach of Implied Joint Venture Agreement and Breach of Implied Partnership Agreement (Counterclaims 2 and 4)

#### a. Relevant Substantive Law

In the absence of an express agreement to form a joint venture or partnership, "[a] joint venture or partnership may be . . . assumed to have been organized from a reasonable deduction from the acts and declarations of the parties." *Weiner v. Fleischman*, 54 Cal. 3d 476, 482–83 (1991) (quotation omitted). Section 16202(c) of the Corporations Code provides rules for "determining whether a partnership has been formed." These rules provide that joint ownership of property and sharing of gross returns do not by themselves establish a partnership. *Id.* § 16202(c)(1)–(2). The sharing of profits, by contrast, creates a presumption that a partnership exists, unless the profits were used for certain purposes. *Id.* § 16202(c)(3).

While joint ownership of property, sharing of gross returns, and sharing of profits can be evidence of the existence of a joint venture or partnership, they are not required elements, and the presence or absence of any one feature "is not necessarily dispositive." *See Holmes v. Lerner*, 74 Cal. App. 4th 442, 454 (1999), *as modified*, (Sept. 7, 1999). Instead, "[t]he crucial factor is the intent of the parties revealed in the terms of their agreement, conduct, and the surrounding circumstances when determining whether a partnership exists." *Interserve, Inc. v. Fusion Garage PTE. LTD.*, No. C 09-5812 RS PVT, 2010 WL 3339520, at *5 n.3 (N.D. Cal. Aug. 24, 2010) (quoting *Holmes*, 74 Cal. App. 4th at 454) (alterations and emphasis omitted). Accordingly, to adequately plead the existence of an implied partnership or joint venture agreement, a plaintiff need only allege conduct and circumstances from which an intention to operate a business as co-owners and share management responsibilities may be inferred, regardless of whether the parties intended to form a partnership. *See Holmes*, 74 Cal. App. 4th at 454; *see also* Cal. Corp. Code § 16202(a) (defining a partnership as "the association of two or more persons to carry on as co-owners a business for profit . . . whether or not the persons intended to form a partnership").

#### b. Whether the Answer and Counterclaims Adequately Alleges the Existence of an Implied Joint Venture or Partnership Agreement

Counterclaims 2 and 4 adequately allege the existence of an implied joint venture or partnership between Kim and Babineau. Kim alleges that he and Babineau agreed to develop and

22

United States District Court
Northern District of California

1    run a business together, as well as alleging conduct from which that intent may be inferred, even if

2    Kim and Babineau did not have an express agreement to operate as joint venturers or partners.  *See*

3    Answer & Countercl. at 12–13, ¶¶ 13–15.  In particular, Kim alleges that the two named their

4    business, agreed to share ownership of the business, and decided to manage different aspects of

5    the business.  *Id.* ¶¶ 13–14.  Kim alleges that he and Babineau signed tandem non-disclosure

6    agreements with a data provider to acquire consumer spending datasets.  *Id.* at 13, ¶ 15.  Further,

7    Kim alleges that between September of 2013 and September of 2014, he and Babineau worked

8    long hours together, split business costs, and discussed whether to incur certain business expenses.

9    *Id.* at 13–14, ¶¶ 16–18.

10          Second Measure is correct that Counterclaims 2 and 4 do not allege the indicia of a

11   partnership described in section 16202(c) of the Corporations Code: joint ownership of property,

12   sharing of gross returns, and sharing of profits.  *See* Mot. at 10.  But the presence or absence of

13   any of these indicia is not dispositive.  *See Holmes*, 74 Cal. App. 4th at 454.  Rather, the existence

14   of a joint venture or partnership depends on the whether Kim and Babineau intended "to carry on

15   as co-owners a business for profit," which is revealed through their agreements, conduct, and

16   surrounding circumstances.  *See* Cal. Corp. Code § 16202(a); *Holmes*, 74 Cal. App. 4th at 454.

17   Counterclaims 2 and 4 allege sufficient agreements, conduct, and circumstances from which it

18   may be inferred that Kim and Babineau intended to operate a business as co-owners.

19          Accordingly, Counterclaims 2 and 4 adequately allege the existence of an implied joint

20   venture or partnership.  Further, as described with respect to Counterclaims 1 and 3,

21   Counterclaims 2 and 4 adequately allege that Kim performed his duties under the agreement, that

22   Babineau breached the implied agreement, and that Babineau's breach caused damages to Kim.

23   See Answer & Countercl. at 15–20, ¶¶ 23, 24, 36–40, 52–56.

24                  c.   Second Measure's Remaining Arguments

25          Second Measure's remaining arguments fail with respect to Counterclaims 2 and 4 for the

26   same reasons as Counterclaims 1 and 3.  Kim is permitted to bring his action without first seeking

27   an accounting because Kim is seeking to enforce his rights as a partner or joint venturer.  *See* Cal.

28   Corp. Code § 16405(b)(1)–(2).  Kim has adequately alleged damages because he claims to be

United States District Court
Northern District of California

1   entitled to his share of the business's assets and profits.  *See* Answer & Countercl. at 17–20, ¶¶ 37,

2   40, 53, 56; Cal. Corp. Code § 16807.  And even if Babineau dissolved the joint venture or

3   partnership in September of 2014, he was not subsequently entitled to appropriate its business

4   opportunities.  *See* Cal. Corp. Code § 16404(b); *Leff*, 33 Cal. 3d at 514.  Second Measure's request

5   to dismiss Counterclaims 2 and 4 is therefore DENIED.

6               **3.   Breach of Fiduciary Duty (Counterclaim 5)**

7                  a.   Relevant Substantive Law

8         To establish a breach of fiduciary duty, a plaintiff must show "(1) existence of a fiduciary

9   duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach."  *People*

10  *ex rel. Harris v. Rizzo*, 214 Cal. App. 4th 921, 950 (2013) (quotation omitted).  Section 16404 of

11  the California Corporations Code provides a nonexclusive list of the fiduciary duties that one

12  partner owes to another.  *See Enea v. Superior Court*, 132 Cal. App. 4th 1559, 1565 (2005)

13  (holding that the list is "comprehensive, but not exhaustive" (quotation and emphasis omitted)).

14  Because fiduciary duties are imposed by statute, pleading the existence of partnership or joint

15  venture is sufficient to establish the existence of a fiduciary duty. *See Sacramento E.D.M., Inc. v.*

16  *Hynes Aviation Indus., Inc.*, 965 F. Supp. 2d 1141, 1150 (E.D. Cal. 2013).

17        The fiduciary duties imposed by statute include the duty to account to the partnership for

18  profits and for benefits "derived from a use by [a] partner of partnership property or information,

19  including the appropriation of a partnership opportunity."  Cal. Corp. Code § 16404(b)(1).  As

20  described with respect to Counterclaims 1 and 3, these fiduciary duties persist after dissolution of

21  the partnership such that a partner may not "divert partnership opportunities for his personal

22  benefit to the detriment of his former partners or . . . exclude the ex-partner from the benefits of an

23  existing partnership opportunity."  *Crouse v. Brobeck, Phleger & Harrison*, 67 Cal. App. 4th

24  1509, 1551 (1998) (citations omitted).

25
26              b.   Whether the Answer and Counterclaims Adequately Alleges Breach of a
                Fiduciary Duty

27        Counterclaim 5 adequately alleges the existence of a fiduciary duty because, as described

28  above, Counterclaims 1–4 allege the existence of a partnership or joint venture in sufficient detail.

*See Sacramento E.D.M., Inc.*, 965 F. Supp. 2d 1150.  Counterclaim 5 further alleges breach of a fiduciary duty because it alleges that Babineau shut Kim out of the business and appropriated its property, information, and opportunities for himself.  Answer & Countercl. at 15–20, ¶¶ 23, 24, 58, 59.  Moreover, as described with respect to Counterclaims 1 and 3, even if Babineau dissolved the joint venture or partnership in September of 2014, the allegations are sufficient to support an inference that he breached his ongoing fiduciary duties by appropriating the business's opportunities for himself after the dissolution.  *See* Cal. Corp. Code § 16404; *Crouse*, 67 Cal. App. 4th at 1551.  Finally, Kim alleges that Babineau's breach of a fiduciary duty caused him harm. *See* Answer & Countercl. at 15–20, ¶¶ 23, 24, 27–31, 36–40, 43–47, 52–56, 61.  Accordingly, Counterclaim 5 adequately alleges breach of a fiduciary duty.

### c.   Second Measure's Remaining Arguments

Second Measure's remaining arguments fail with respect to Counterclaim 5 for the same reasons as Counterclaims 1–4.  Section 16405(b)(2)(A) of the Corporations Code permits Kim to enforce a partner's fiduciary duties without bringing an accounting action as a prerequisite.  And as described above, Kim has adequately alleged damages by alleging that Babineau's breach of fiduciary duty has deprived him of partnership or joint venture assets and profits to which he is entitled.  *See*, *e.g.*, Answer & Countercl. at 16–20, ¶¶ 28, 37, 56, 61; *see also* Cal. Corp. Code § 16807.  Second Measure's request to dismiss Counterclaim 5 is therefore DENIED.

### 4.   Conversion (Counterclaim 7)

### a.   Relevant Substantive Law

Under California law conversion refers to "an actual interference with [the plaintiff's] ownership or right of possession."  *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 136 (1990). To establish a claim of conversion, the plaintiff must show "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages."  *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003) (citing *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1065 (1998)).  One partner can be liable to another for conversion of partnership property.  *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 546 (1996), *as modified on denial of reh'g*, (Apr. 10, 1996).  Further, intangible property

such as corporate shares and bonds may be the proper subject of a conversion claim.  *See Am. Bankers Mortgage Corp. v. Fed. Home Loan Mortgage Corp.*, 75 F.3d 1401, 1411 (9th Cir. 1996) (collecting California cases); *see also Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 125 (2007) (holding that a business's net operating loss is the proper subject of conversion because it is a definite, recordable amount).  However, more abstract intangible property, such as business goodwill and business strategies are not proper subjects of conversion.  *See Fremont*, 148 Cal. App. 4th at 123.

            b.   Whether the Answer and Counterclaims Adequately Alleges Conversion

Counterclaim 7 adequately alleges the elements of Conversion against the Counterclaim Defendants.  First, as described with respect to Counterclaims 1 and 3, Kim alleges the existence of property to which he was entitled because, assuming Kim's allegations to be true, Kim would have had a right to a share of the business's assets and profits.  *See* Cal. Corp. Code § 16807; Answer & Countercl. at 21 ¶ 64 ("Kim . . . was entitled to . . . his share of the [business's] property, assets, and profits . . . .").  Further, this is the type of property that is the proper subject of a claim of conversion because it is of ascertainable value.  *See Fremont*, 148 Cal. App. 4th at 122–25, *Oakdale*, 43 Cal. App. 4th at 546.

Second Measure apparently contends that its argument about the sufficiency of Kim's allegations of partnership property is particularly applicable to the counterclaim of conversion because it shows there was no property to convert or misappropriate.  *See* Mot. at 15.  Here, Second Measure emphasizes that abstract and intangible business strategies—such as Kim's idea of analyzing and leveraging consumer datasets—are not the type of property that can be converted.  *Id.* at 15; Reply at 5, 7–8.  However, regardless of whether Kim's business idea constitutes the type of property that can be converted, Kim claims that he is entitled to a share of the business's assets and profits.  Answer & Countercl. at 21, ¶ 64.  Because the business assets and profits would be the proper subject of a claim of conversion, that property alone is sufficient to support Counterclaim 7.  *See Fremont*, 148 Cal. App. 4th at 122–25; *Oakdale*, 43 Cal. App. 4th at 546.

Counterclaim 7 also adequately alleges the second element of conversion—that the

Counterclaim Defendants wrongfully converted the property to which Kim was entitled.  The

Counterclaim alleges that Babineau and Chou "formed an undisclosed intent to eventually

wrongfully exclude [Kim] from the joint venture/partnership, in order to take for themselves

[Kim's] rightful share of the enterprise."  Answer & Countercl. at 15, ¶ 22.  Kim further alleges

that in September of 2014, Babineau and Chou actually did exclude him from the business by

"depriving him of access to computer servers and shared online chat and note applications to

prevent [Kim] from doing any further work . . . or accessing his work product created up to that

point."  *Id.* ¶ 23.  By shutting Kim out of the business and refusing to communicate with him,

Counterclaim 7 alleges that Babineau, Chou, and Second Measure wrongfully deprived him of the

business assets and profits to which he was entitled.  *Id.* at 15–21, ¶¶ 22–24, 64–65.  Because this

also establishes that Kim suffered damages from the conversion, Counterclaim 7 adequately

alleges conversion with respect to the Counterclaim Defendants.  *See id.* ¶ 67.

> c.   Second Measure's Remaining Arguments

As described with respect to Counterclaims 1–5, Second Measure's remaining arguments

also fail for Counterclaim 7.  Under section 16405(b) of the California Corporations Code, Kim is

permitted to bring his action without first seeking an accounting.  As described above, Kim has

adequately alleged damages by alleging that the Counterclaim Defendants converted partnership

assets and profits to which he was entitled.  Second Measure's request to dismiss Counterclaim 7

is therefore DENIED.

## D.   Motion for a More Definite Statement

The allegations in the Answer and Counterclaims are not so vague or ambiguous that the

Counterclaim Defendants cannot reasonably prepare a response.  *See* FED. R. CIV. P. 12(e).  With

respect to the formation of the partnership or joint venture, Kim alleges when the relationship was

formed and the general terms on which he and Babineau agreed.  Answer & Countercl. at 12–13,

¶¶ 13–14.  With respect to partnership property, Kim alleges a division of business expenses; the

existence of shared computer servers, applications, and datasets; and partnership assets and profits

to which Kim claims to be entitled.  *Id.* at 14–21, ¶¶ 18, 23, 64.  This is sufficient detail for the

Counterclaim Defendants to frame a response.  The further detail that the Counterclaim

Defendants seek is the type of information that is properly obtained through discovery, not a motion under Rule 12(e).  *See Velasquez v. HSBC Fin. Corp.*, No. 08-4592 SC, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009).

**IV.     CONCLUSION**

For the reasons stated above, Plaintiffs' motion is DENIED.

**IT IS SO ORDERED.**

Dated: November 10, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

28