| | |
|---|---|
| 1 | HARMEET K. DHILLON (SBN: 207873) |
| 2 | harmeet@dhillonlaw.com |
|   | NITOJ P. SINGH (SBN: 265005) |
| 3 | nsingh@dhillonlaw.com |
|   | DHILLON LAW GROUP INC. |
| 4 | 177 Post Street, Suite 700 |
|   | San Francisco, California 94108 |
| 5 | Telephone: (415) 433-1700 |
|   | Facsimile: (415) 520-6593 |

Attorneys for Second Measure, Inc., Michael Babineau, and Lillian Chou

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SECOND MEASURE, INC., a Delaware corporation, | Case Number: 3:15-CV-03395 |
| Plaintiff, | **COUNTERCLAIM DEFENDANTS SECOND MEASURE, INC., MICHAEL BABINEAU, AND LILLIAN CHOU'S ANSWER TO STEVEN KIM'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES; AND MICHAEL BABINEAU AND LILLIAN CHOU'S COUNTERCLAIMS AGAINST STEVEN KIM** |
| v. | |
| STEVEN KIM, an individual, | |
| Defendant, | |
| MICHAEL BABINEAU, and individual; and LILLIAN CHOU, an individual, | |
| Counterclaim Plaintiffs, | |
| v. | |
| STEVEN KIM, an individual, | |
| Counterclaim Defendant, | |
| AND RELATED COUNTERCLAIMS. | |


**ANSWER**

Counterclaim Defendants Second Measure, Inc. ("Second Measure"), Michael Babineau ("Babineau"), and Lillian Chou ("Chou") (collectively, "SM Parties"), by and through their attorneys, the Dhillon Law Group Inc., hereby answer Steven Kim's ("Kim") August 3, 2015 Counterclaims ("Counterclaims") as follows:

1. The SM Parties deny the allegations contained in Paragraph 1 of the Counterclaims, except to admit that Kim and Babineau were friends, and that they, with Chou, investigated the feasibility of starting a business related to consumer spending data, which they described as "Project Recon."

2. The SM Parties deny the allegations contained in Paragraph 2 of the Counterclaims.

3. The SM Parties deny the allegations contained in Paragraph 3 of the Counterclaims.

4. The SM Parties are without information sufficient to admit or deny the allegations contained in Paragraph 4 of the Counterclaims, and therefore deny the allegations.

5. The SM Parties deny the allegations contained in Paragraph 5 of the Counterclaims, except to admit Second Measure is a Delaware corporation with its principal place of business in San Mateo County, California.

6. The SM Parties admit the allegations contained in Paragraph 6 of the Counterclaims.

7. The SM Parties admit the allegations contained in Paragraph 7 of the Counterclaims.

8. The SM Parties deny the allegations contained in Paragraph 8 of the Counterclaims.

9. The SM Parties admit the allegations contained in Paragraph 9 of the Counterclaims.

10. The SM Parties deny the allegations contained in Paragraph 10 of the Counterclaims, except to admit that Kim and Babineau first met in 2003 while working at MCI World Telecom, were friends, that Kim attended Babineau's wedding, and both resided in the San Francisco Bay Area for some time.

11. The SM Parties are without information sufficient to admit or deny the allegations contained in Paragraph 11 of the Counterclaims, and therefore deny the allegations.

12. The SM Parties are without information sufficient to admit or deny the allegations contained in Paragraph 12 of the Counterclaims, and therefore deny the allegations, except to admit

that Kim discussed forming a business with Babineau related to consumer spending data, and that the concept of leveraging consumer spending data for the benefit of investors is not new.

13. The SM Parties deny the allegations contained in Paragraph 13 of the Counterclaims.

14. The SM Parties deny the allegations contained in Paragraph 14 of the Counterclaims.

15. The SM Parties deny the allegations contained in Paragraph 15 of the Counterclaims, except to admit that Kim and Babineau each separately signed non-disclosure agreements with Yodlee, Inc.

16. The SM Parties deny the allegations contained in Paragraph 16 of the Counterclaims, except to admit that Kim, Babineau, and Chou together evaluated the feasibility of starting a business based on consumer spending data, including working past midnight on occasion, over the course of several months, and that different industries have different metrics.

17. The SM Parties deny the allegations contained in Paragraph 17 except to admit that Babineau spent a significant amount of time tagging and organizing data, including working late, and discussing electronically, but deny that Kim provided anything other than minimal assistance as he did not have the SQL knowledge necessary to provide more than minimal assistance.

18. The SM Parties deny the allegations contained in Paragraph 18 except to admit that Babineau and Kim shared some costs, and sought consent before incurring some costs.

19. The SM Parties deny the allegations contained in Paragraph 19 of the Counterclaims.

20. The SM Parties deny the allegations contained in Paragraph 20 of the Counterclaims, except to admit that up until mid-September 2014, Babineau, Chou, and Kim were still evaluating and discussing the business concept, and that Babineau and Kim did have the referenced email exchange, but deny Kim's allegations to context or import.

21. The SM Parties deny the allegations contained in Paragraph 21 of the Counterclaims, except to admit that they did not monetarily compensate Kim for any work he may have provided.

22. The SM Parties deny the allegations contained in Paragraph 22 of the Counterclaims.

23. The SM Parties deny the allegations contained in Paragraph 23 of the Counterclaims, except to admit that Kim's access to Babineau's personal shared services was revoked, and other shared services were shut down; and admit that Second Measure offered Kim a consulting position,



| | |
|---|---|
| 1 | which he accepted. |
| 2 | 24. The SM Parties deny the allegations contained in Paragraph 24 of the Counterclaims, |
| 3 | except to admit that Babineau and Chou incorporated Second Measure, and that Second Measure has |
| 4 | received certain investments in exchange for equity. |
| 5 | 25. The SM Parties deny the allegations contained in Paragraph 25 of the Counterclaims. |
| 6 | 26. The SM Parties deny the allegations contained in Paragraph 26 of the Counterclaims. |
| 7 | 27. The SM Parties deny the allegations contained in Paragraph 27 of the Counterclaims. |
| 8 | 28. The SM Parties deny the allegations contained in Paragraph 28 of the Counterclaims. |
| 9 | 29. The SM Parties deny the allegations contained in Paragraph 29 of the Counterclaims. |
| 10 | 30. The SM Parties deny the allegations contained in Paragraph 30 of the Counterclaims. |
| 11 | 31. The SM Parties deny the allegations contained in Paragraph 31 of the Counterclaims. |
| 12 | 32. The SM Parties deny the allegations contained in Paragraph 32 of the Counterclaims. |
| 13 | 33. The SM Parties deny the allegations contained in Paragraph 33 of the Counterclaims. |
| 14 | 34. The SM Parties deny the allegations contained in Paragraph 34 of the Counterclaims. |
| 15 | 35. The SM Parties deny the allegations contained in Paragraph 35 of the Counterclaims. |
| 16 | 36. The SM Parties deny the allegations contained in Paragraph 36 of the Counterclaims. |
| 17 | 37. The SM Parties deny the allegations contained in Paragraph 37 of the Counterclaims. |
| 18 | 38. The SM Parties deny the allegations contained in Paragraph 38 of the Counterclaims. |
| 19 | 39. The SM Parties deny the allegations contained in Paragraph 39 of the Counterclaims. |
| 20 | 40. The SM Parties deny the allegations contained in Paragraph 40 of the Counterclaims. |
| 21 | 41. The SM Parties deny the allegations contained in Paragraph 41 of the Counterclaims. |
| 22 | 42. The SM Parties deny the allegations contained in Paragraph 42 of the Counterclaims. |
| 23 | 43. The SM Parties deny the allegations contained in Paragraph 43 of the Counterclaims. |
| 24 | 44. The SM Parties deny the allegations contained in Paragraph 44 of the Counterclaims. |
| 25 | 45. The SM Parties deny the allegations contained in Paragraph 45 of the Counterclaims. |
| 26 | 46. The SM Parties deny the allegations contained in Paragraph 46 of the Counterclaims. |
| 27 | 47. The SM Parties deny the allegations contained in Paragraph 47 of the Counterclaims. |
| 28 | 48. The SM Parties deny the allegations contained in Paragraph 48 of the Counterclaims. |



| | | |
|---|---|---|
| 1 | 49. | The SM Parties deny the allegations contained in Paragraph 49 of the Counterclaims. |
| 2 | 50. | The SM Parties deny the allegations contained in Paragraph 50 of the Counterclaims. |
| 3 | 51. | The SM Parties deny the allegations contained in Paragraph 51 of the Counterclaims. |
| 4 | 52. | The SM Parties deny the allegations contained in Paragraph 52 of the Counterclaims. |
| 5 | 53. | The SM Parties deny the allegations contained in Paragraph 53 of the Counterclaims. |
| 6 | 54. | The SM Parties deny the allegations contained in Paragraph 54 of the Counterclaims. |
| 7 | 55. | The SM Parties deny the allegations contained in Paragraph 55 of the Counterclaims. |
| 8 | 56. | The SM Parties deny the allegations contained in Paragraph 56 of the Counterclaims. |
| 9 | 57. | The SM Parties deny the allegations contained in Paragraph 57 of the Counterclaims. |
| 10 | 58. | The SM Parties deny the allegations contained in Paragraph 58 of the Counterclaims. |
| 11 | 59. | The SM Parties deny the allegations contained in Paragraph 59 of the Counterclaims. |
| 12 | 60. | The SM Parties deny the allegations contained in Paragraph 60 of the Counterclaims. |
| 13 | 61. | The SM Parties deny the allegations contained in Paragraph 61 of the Counterclaims. |
| 14 | 62. | The SM Parties deny the allegations contained in Paragraph 62 of the Counterclaims. |
| 15 | 63. | The SM Parties deny the allegations contained in Paragraph 63 of the Counterclaims. |
| 16 | 64. | The SM Parties deny the allegations contained in Paragraph 64 of the Counterclaims. |
| 17 | 65. | The SM Parties deny the allegations contained in Paragraph 65 of the Counterclaims. |
| 18 | 66. | The SM Parties deny the allegations contained in Paragraph 66 of the Counterclaims. |
| 19 | 67. | The SM Parties deny the allegations contained in Paragraph 67 of the Counterclaims. |
| 20 | 68. | The SM Parties deny the allegations contained in Paragraph 68 of the Counterclaims. |
| 21 | 69. | The SM Parties deny the allegations contained in Paragraph 69 of the Counterclaims. |
| 22 | 70. | The SM Parties deny that Kim is entitled to any of the relief requested in his Prayer for Relief. |

24 ///
25 ///
26 ///



SM Parties Answer and Counterclaims                              Case No. 3:15-CV-03395

# AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Failure to Perform)

1. Kim cannot recover the damages alleged against the SM Parties in the causes of action in the Counterclaims because Kim failed to perform its own obligations under the alleged contract that were due prior to the alleged breaches by the SM parties.

## SECOND AFFIRMATIVE DEFENSE

### (Anticipatory Breach/Anticipatory Repudiation)

2. The SM Parties are informed and believe, and on that basis allege, that Kim's action is barred by the doctrines of anticipatory breach and anticipatory repudiation.

## THIRD AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

3. The SM Parties are informed and believe, and on that basis allege, that Kim will be unjustly enriched if Kim is allowed to recover the damages alleged in the Counterclaims.

## FOURTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

4. Each and every cause of action in the Counterclaims is barred because Kim has failed to state a claim. Assuming that a partnership or joint venture was formed, Babineau was entitled to dissolve the partnership or joint venture, take his share of the partnership or joint venture assets, and compete with Kim in the same line of business.

## FIFTH AFFIRMATIVE DEFENSE

### (Substantial Factor)

5. Each and every cause of action in the Counterclaims is barred because no act or omission attributable to the SM Parties was a substantial factor in the damages, if any, suffered by Kim. SM Parties performed all legal obligations, if any, required of them.

## SIXTH AFFIRMATIVE DEFENSE

### (Comparative Negligence and Fault)

6. The SM Parties are not legally responsible in any manner with respect to the damages



claimed by Kim in his Counterclaims. If, however, the SM Parties are found to be legally responsible, such responsibility is not the sole and proximate cause of any alleged damage purportedly suffered by Kim. Kim was negligent in defining the terms of the parties' contract, and in communicating the nature of the parties' relationship.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Assumption of Risk)**

7. All damages and injuries alleged to have been sustained by Kim in the Counterclaims were proximately caused by and are the proximate result of the risks assumed by Kim, and thus each and every cause of action in the Counterclaims is barred by Kim's assumption of risk. Kim disclosed certain information to Babineau and Chou without in any way restricting how they may use that information.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Laches)**

8. Each and every cause of action in the Counterclaims is barred by the doctrine of laches on the basis of statements and/or actions of Kim. Kim alleged that the SM Parties breached the parties' agreement in September 2014; however, remained friendly with the parties and supported Second Measure's business thereafter.

**NINTH AFFIRMATIVE DEFENSE**

**(Speculative Damages)**

9. Kim cannot recover the damages alleged against the SM Parties in each cause of action in the Counterclaims because such alleged damages are speculative. Kim's claims are breached on a vague contract, with unspecific requirements and understandings. Accordingly, the usual measure of expectation damages cannot be utilized here.

**TENTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate Damages)**

10. Kim has failed to mitigate its alleged losses, injuries, or damages, if any, and therefore Kim is barred from recovering any damages which could have been avoided by reasonable mitigation efforts.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Set-Off)

11. Should Kim recover from the SM Parties, then the SM Parties are entitled to a set-off of any amounts found owing against sums owed by Kim to the SM Parties. Chou provided significant services to Kim, for which she did not receive any compensation. Additionally, Second Measure contracted for Kim to serve as a consultant, but he failed to provide any consulting services.

## TWELFTH AFFIRMATIVE DEFENSE

### (No Damages)

12. Each and every cause of action in the Counterclaims is barred because Kim has not sustained or is not entitled to any damages.

///

///

///

## COUNTERCLAIMS

Michael Babineau ("Mr. Babineau") and Lillian Chou ("Ms. Chou"), by and through their attorneys, the Dhillon Law Group Inc., files these Counterclaims against Steven Kim ("Mr. Kim"). Upon information and belief, Mr. Babineau and Ms. Chou alleges as follows:

## THE PARTIES

1. Mr. Babineau is an individual residing in San Mateo, California, and is a co-founder of Second Measure, Inc. ("Second Measure" or the "Company").

2. Ms. Chou is an individual residing in San Mateo, California, and is a co-founder of Second Measure.

3. Mr. Kim is an individual who, upon information and belief, resides in Dallas, Texas.

## FACTUAL BACKGROUND

4. Second Measure is a young startup company incorporated in January 2015 by Mr. Babineau and Ms. Chou to build tools and services designed to leverage consumer spending data for the ultimate benefit of hedge funds and other large investors. Mr. Babineau and Ms. Chou are IT engineering and data analytics experts that leveraged their expertise to make Second Measure's offerings possible.

5. Mr. Kim seeks one-half of the equity of Second Measure. Mr. Kim demands the sizeable stake in the Company even though he did not write any of the computer code that makes Second Measure's products and services possible, did not provide any design or engineering input on Second Measure's products and services, and has not shared any significant technical or business contributions with Mr. Babineau and Ms. Chou in relation to any enterprise for more than a year.

6. Mr. Kim apparently believes he is entitled to half of the Company because he allegedly brought an idea to Mr. Babineau nearly two years ago, and now believes that idea matured into Second Measure. However, it is clear that Mr. Kim has not contributed even marginally towards Second Measure, and was not even responsible for the original idea that may have led to the formation of Second Measure.

7. In or around July 2013, Mr. Kim introduced Mr. Babineau to Mr. Zafar Jafri ("Jafri"). Mr. Jafri, a financial research analyst, had access to large consumer spending datasets and sought the

help of an engineer to help analyze and obtain some actionable intelligence from the same. Mr. Jafri, then with hedge fund Tiger Global Management, LLC, sought to trade directly based off of trends and information gleaned from the consumer spending datasets. Mr. Kim, having learned what Mr. Jafri was trying to accomplish, suggested that Mr. Babineau help Mr. Jafri flush out some of the technical issues and possible solutions with Mr. Jafri's concept. Messrs. Jafri and Babineau did engage in such discussions in July 2013.

8. Mr. Kim apparently thought Mr. Jafri's idea was a good one, and in September 2013 discussed the possibility of forming a business based on the same with Mr. Babineau. Mr. Babineau thought the concept warranted at least an examination, and began to evaluate the possibility of forming a business on the concept when Messrs. Babineau and Kim gained access to the same dataset that Mr. Jafri was working with.[1] Given that it was Mr. Jafri's unoriginal idea that Messrs. Kim and Babineau were evaluating, Mr. Kim did not ask Mr. Babineau to sign a non-disclosure agreement, nor did they agree to form a company or assign any intellectual property to the company.

9. Further evidencing that Mr. Kim's purported "idea" was neither conceived by him, nor unique, is that there are multiple companies currently offering services and products based on consumer spending data, including, 7Park Data, 1010data, MasterCard, and First Data. The availability and use of consumer spending datasets is widely known and generally available to finance and banking professionals.

10. Mr. Babineau immediately realized that the evaluation would benefit from a data engineer and recruited Ms. Chou to assist in October 2013, within days of their gaining access to a consumer spending dataset. From then on, Messrs. Babineau and Kim, and Ms. Chou worked together to evaluate the possibility of forming a business built on consumer spending dataset analytics and services. At no point beginning in September 2013, or any time thereafter, did the Messrs. Babineau and Kim, and Ms. Chou come to any agreement to form a definite business together, come to any agreement as to equity split in any business, or agree to assign any intellectual property they may have created to any business. In fact, none of Messrs. Babineau and Kim, or Ms. Chou left their then respective full-time jobs, and none of them then committed to working together and forming a

---

[1] In reality, only Mr. Babineau worked with the dataset. Mr. Kim did not have the technical skillset to work directly with the data.



definite business.

11. Multiple communications between Messrs. Babineau and Kim, and Ms. Chou, including correspondence in June and September 2014, confirm that there was no agreement as to any equity split between the parties as to any company.

12. In March 2014, Mr. Kim terminated his involvement with the business evaluation as a result of two events: 1) Messrs. Babineau and Kim, and Ms. Chou were unable to come to an agreement with third parties with respect to access to datasets, and 2) Mr. Kim moved from California to Texas to accept a position with Surveyor Capital. In correspondence during that time, Mr. Kim conveyed that he would likely not be able to continue to work with Mr. Babineau and Ms. Chou in evaluating the business concept. Indeed, Mr. Kim recognized that working with Mr. Babineau and Ms. Chou on such an investment-related project may present a conflict of interest for Mr. Kim with his employment with Surveyor Capital.

13. From March 2014 onwards, Mr. Kim showed no interest in continuing to evaluate the business concept, or to work with Mr. Babineau and Ms. Chou to form a definite business built on the concept they were evaluating. In August 2014, when Mr. Babineau and Ms. Chou actually agreed to thereafter form a definite business built upon consumer spending datasets, and analytics thereof, Mr. Kim made clear that he was unwilling to match Mr. Babineau and Ms. Chou's commitment to the contemplated enterprise. Instead, Mr. Kim elected to stay with Surveyor Capital, rather than join Mr. Babineau and Ms. Chou on a full-time basis.

14. In late-September 2014, having agreed to form a new business together, and a business generally for the first time, Mr. Babineau and Ms. Chou decided to start anew with respect to all computer code and design. They discarded all code and design developed prior to September 2014, including any code that may have been developed in consultation with Mr. Kim, or on which Mr. Kim may have provided design and guidance feedback. Mr. Babineau and Ms. Chou were diligent in wiping any contribution Mr. Kim may have provided from their records before starting their new venture.

15. It was Mr. Babineau and Ms. Chou's newly formed late-September 2014 business, wiped clean of any input from Mr. Kim, and wholly unrelated to Mr. Kim, that eventually evolved

into Second Measure. Given the distinct genesis of Second Measure separate from any of Mr. Kim's purported contributions, Second Measure contends that Mr. Kim is not entitled to any portion of Second Measure. Mr. Kim is not a shareholder of Second Measure.

16. In or around January 2015, Second Measure invited Mr. Kim to join the company as a consultant. Ultimately, Mr. Babineau, on behalf of Second Measure, came to an oral consulting agreement (the "Consulting Agreement") with Mr. Kim that same month. The Consulting Agreement provided that Mr. Kim would advise the Company as to strategy, deals, customers, competitors, and data sources, stemming from his expertise in the financial space. Mr. Kim was also to provide Second Measure with introductions to potential customers, partners, investors, and other interested persons. In exchange for the significant services agreed upon, the Company agreed to provide Mr. Kim with a total of 10% of the then-authorized stock of Second Measure, with 2% fully vested, and the remaining 8% to vest over the next four years, with the understanding that the equity interest provided by the Consulting Agreement was the only source of Mr. Kim's equity interest in Second Measure.

17. Despite the oral Consulting Agreement, Mr. Kim failed to provide the significant consulting services required of him. As such, Mr. Kim never earned the initial 2% interest in Second Measure, or the subsequent 8% that was to vest over the four years from the date of the Consulting Agreement.

18. Mr. Kim now contends that he is entitled to an unspecified, but "substantial," equity interest in the Company. Moreover, Mr. Kim alleges that he formed a partnership or joint venture with Mr. Babineau in September 2013, and that the fruits of that partnership or joint venture were taken, and are being used, by Second Measure, Mr. Babineau, and Ms. Chou.

### FIRST CAUSE OF ACTION

### Declaratory Relief

### (Mr. Babineau and Ms. Chou against Mr. Kim)

19. Mr. Babineau and Ms. Chou incorporate every allegation contained in each and every one of the above paragraphs, as though set forth fully herein.

20. An actual, present, and justifiable controversy has arisen between the parties to this



1 Action regarding whether Mr. Kim is entitled to an equity interest in Second Measure.

2 21. On the one hand, Mr. Babineau and Ms. Chou contend that Mr. Kim does not have any equity interest in Second Measure, and that the Company's directors and officers do not owe Mr. Kim any fiduciary duty.

22. On the other hand, Mr. Kim contends that he has a substantial equity interest in Second Measure, and that the Company's directors and officers owe him a fiduciary duty.

23. This Court is vested with the power to declare and adjudicate the rights and legal relationships of the parties to this Action with reference to the issues raised by these Counterclaims.

24. Mr. Babineau and Ms. Chou desire a judicial determination of the rights and obligations of each of the parties to this Action with respect to the matters set forth in preceding paragraphs.

25. A judicial declaration is necessary and appropriate at this time under the circumstances so that Mr. Babineau, Ms. Chou, and Mr. Kim may ascertain their rights and duties as specified above.

## SECOND CAUSE OF ACTION

### Failure to Pay the Minimum Wage

### (Ms. Chou against Mr. Kim)

26. Mr. Babineau and Ms. Chou incorporate every allegation contained in each and every one of the above paragraphs, as though set forth fully herein.

27. Labor Code section 1182.12 provides in relevant part that "on and after July 1, 2014, the minimum wage for all industries shall be not less than nine dollars ($9.00) per hour."

28. The previous version of Labor Code section 1182.12 provided in relevant part that "on and after January 1, 2008, the minimum wage for all industries shall be not less than eight dollars ($8.00) per hour."

29. Labor Code section 1197 provides, in relevant part, that it is unlawful to pay less than the minimum wage.

30. During the relevant time period, Ms. Chou worked a significant number of hours for Mr. Kim, towards his alleged partnership or joint venture, for which Mr. Kim failed to pay Ms. Chou



1 | any compensation at all, let alone the minimum wage required under the Labor Code.

2 | 31. Mr. Kim knew that Ms. Chou was working to evaluate the business concept, which Mr. Kim regarded as work towards the alleged joint venture or partnership. Consequently, Mr. Kim's failure to pay at least the minimum wage due and owing to Ms. Chou was intentional and knowing.

32. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, Mr. Kim's failure to pay Ms. Chou at least the minimum wage for all hours worked, as required by California law, violates the provisions of Labor Code sections 1182.12, 1194, and 1197, and is therefore unlawful.

33. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, pursuant to Labor Code section 1197.1, Ms. Chou is entitled to restitution of wages and liquidated damages.

34. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, pursuant to Labor Code section 1194.2, Ms. Chou is entitled bring this suit to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

35. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, pursuant to Labor Code sections 218.6 and 1194, Ms. Chou is entitled to interest on all due and unpaid wages at the legal rate of ten percent per annum from the date the wages were due and payable, in a total amount to be proven at trial.

36. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, pursuant to Labor Code sections 218.5 and 1194, Ms. Chou is entitled to bring a private right of action to recover all due and unpaid minimum wage compensation, interest, attorneys' fees, and costs.

### THIRD CAUSE OF ACTION

### Failure to Pay Earned Wages

### (Ms. Chou against Mr. Kim)

37. Mr. Babineau and Ms. Chou incorporate every allegation contained in each and every one of the above paragraphs, as though set forth fully herein.


38. Labor Code section 204 provides that all wages earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer. Section 204 further provides that labor performed between the first and fifteenth days, inclusive, of any calendar month shall be paid between the sixteenth and twenty-sixth day of the month during which the labor is performed, and labor performed between the sixteenth and the last day, inclusive, of any calendar month shall be paid between the first and tenth day of the following month.

39. Ms. Chou performed services for what Mr. Kim alleges was a partnership or joint venture, from October 2013 to September 2014.

40. Throughout this time, and to date, Mr. Kim failed to pay Ms. Chou for all the hours she worked. Consequently, and assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, Mr. Kim is in violation of Labor Code section 204.

41. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, Mr. Kim willfully and intentionally failed to pay Ms. Chou her wages twice during each calendar month because Mr. Kim routinely failed to pay her whatsoever for any of the overtime hours she worked or for any of the hours she worked when she was not scheduled but required to remain on-call and report to work to perform additional duties.

42. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, pursuant to Labor Code section 218.6, Ms. Chou is entitled to pre-judgment interest on all due and unpaid wages at the legal rate of ten percent per annum, which accrues from the date that the wages were due and payable.

43. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, pursuant to Labor Code section 218.5, Ms. Chou is also entitled to reasonable attorney's fees and costs.

44. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, because of his failure to pay wages, Mr. Kim is also liable for civil penalties. Labor Code section 210 provides that any person who fails to pay the wages of each


employee as provided in Labor Code section 204 is subject to civil penalties as follows: for any initial violation, $100 for each failure to pay each employee, and for each subsequent violation, or any or willful or intentional violation, $200 for each failure to pay each employee, plus 25% of the amount unlawfully withheld.

### FOURTH CAUSE OF ACTION

### Failure to Pay Wages at Termination

### (Ms. Chou against Mr. Kim)

45. Mr. Babineau and Ms. Chou incorporate every allegation contained in each and every one of the above paragraphs, as though set forth fully herein.

46. Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to resign, in which case the employee is entitled to his or her wages at the time of resignation.

47. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, Mr. Kim failed to pay Ms. Chou her wages earned and unpaid within seventy-two hours from the time of her separation from the purported partnership or joint venture, in violation of Labor Code sections 201 and 202.

48. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, Mr. Kim's failure to pay wages due under Labor Code sections 201 and 202 is a result of Mr. Kim's willful and knowing failure to pay Ms. Chou for all the hours she worked.

49. Labor Code section 203 provides that if an employer willfully fails to pay its workers their wages earned and unpaid at the time of discharge or resignation pursuant to Labor Code sections 201 and 202, the wages of the workers shall continue as a statutory penalty from the due date for a maximum of thirty days. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, Ms. Chou is entitled to a payment equal to



thirty days of her wages, in an amount to be proven at trial.

50. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, pursuant to Labor Code section 203(b), Ms. Chou is entitled to bring a suit to recover penalties for Mr. Kim's violations of Labor Code sections 201 and 202.

51. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, pursuant to Labor Code sections 203 and 256, Mr. Kim's failure to pay Ms. Chou her earned and unpaid wages upon discharge also subject Mr. Kim to a civil penalty equal to thirty days of Ms. Chou's wages, in an amount to be proven at trial.

52. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, pursuant to Labor Code sections 218.5, Ms. Chou is entitled to reasonable attorney's fees and costs incurred in this suit.

53. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, pursuant to Labor Code sections 218.6, Ms. Chou is entitled to interest on all due and unpaid wages at the legal rate of ten percent per annum from the date the wages were due and payable, in a total amount to be proven at trial.

### FIFTH CAUSE OF ACTION

### Failure to Provide Accurate Itemized Wage Statements

### (Ms. Chou against Mr. Kim)

54. Mr. Babineau and Ms. Chou incorporate every allegation contained in each and every one of the above paragraphs, as though set forth fully herein.

55. Labor Code section 226 provides that every employer is required, "semimonthly or at the time of each payment of wages," to provide each of his or her employees an itemized wage statement, including, *inter alia*, the total hours worked by the employee, and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

56. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, during the period that Ms. Chou was employed by Mr. Kim, Mr. Kim failed to provide her with full and accurate itemized wage statements as required by Labor



17

SM Parties Answer and Counterclaims                                        Case No. 3:15-CV-03395

Code section 226.

57. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, pursuant to Labor Code section 226(e), Ms. Chou is entitled to recover $50 per pay period for the initial violation and $100 per pay period for each subsequent violation, not exceeding an aggregate of $4,000, plus attorney fees and costs, for Mr. Kim's violations of Labor Code section 226(a).

58. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, Ms. Chou also seeks injunctive relief to prevent Mr. Kim from causing injury by its failure to provide full and accurate itemized wage statements and seeks attorney fees and costs in bringing suit, as provided by Labor Code section 226(h).

59. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, pursuant to Labor Code section 226.3, Mr. Kim is subject to a civil penalty in the amount of $250 per employee per initial violation and $1,000 per employee per violation for each subsequent violation.

## SIXTH CAUSE OF ACTION

## Failure to Maintain Adequate Records

### (Ms. Chou against Mr. Kim)

60. Mr. Babineau and Ms. Chou incorporate every allegation contained in each and every one of the above paragraphs, as though set forth fully herein.

61. Labor Code sections 1174 and 1174.5 require that employers must keep records of the total hours worked by employees.

62. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, upon information and belief, Mr. Kim violated Labor Code section 1174 by willfully failing to keep required payroll records showing all hours worked by Ms. Chou.

63. Assuming this Court finds that Mr. Babineau and Mr. Kim formed a partnership or joint venture, which Ms. Chou contests, as a result of these violations Mr. Kim is liable for a civil penalty of $500 under Labor Code section 1174.5.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Babineau and Ms. Chou pray for judgment against Mr. Kim as follows:

1. For a judicial declaration stating:

    a. that Mr. Kim does not have any equity interest in Second Measure; and

    b. that the Company's directors and officers do not owe Mr. Kim any fiduciary duty.

2. For all damages legally and/or proximately caused to Mr. Babineau and Ms. Chou by Mr. Kim in an amount to be proven at trial;

3. For attorneys' fees pursuant to statute;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date: May 8, 2015                             DHILLON LAW GROUP INC.

                                          By: */s/ Nitoj P. Singh*
                                               Nitoj P. Singh

                                               Attorneys for Second Measure Inc., Michael Babineau, and Lillian Chou

