HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
NITOJ P. SINGH (SBN: 265005)
nsingh@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Second Measure, Inc., Michael Babineau,
and Lillian Chou

THOMAS V. CHRISTOPHER (SBN: 185928)
thomas@thomaschristopherlaw.com
THE LAW OFFICES OF THOMAS V.
CHRISTOPHER
555 California Street, Suite 4925
San Francisco, California 94104
Telephone: (415) 659-1805
Facsimile: (415) 659-1950

Attorneys for Steven Kim

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| SECOND MEASURE, INC., a Delaware corporation, | Case Number: 3:15-CV-03395 |
| Plaintiff, | **JOINT PRETRIAL CONFERENCE STATEMENT** |
| v. | Pre-Trial Conference:   May 19, 2017 |
| STEVEN KIM, an individual, | Trial Date:                  June 1, 2017 |
| Defendant, | |
| AND RELATED COUNTERCLAIMS. | |

1   **1.   DESCRIPTION OF ACTION**

2       **A. Substance of Action**

3   **Second Measure, Mr. Babineau and Ms. Chou's Description of the Action.**

4       In or around July 2013, Mr. Steven Kim ("Mr. Kim") introduced Mr. Michael

5   Babineau ("Mr. Babineau") to Zafar Jafri ("Mr. Jafri"). Mr. Jafri, a financial professional, had

6   access to credit card and bank spending data and sought the help of an engineer to help

7   analyze the same. Mr. Jafri sought to make investment decisions based off of the datasets.

8   Many companies, then and now, have employed similar strategies. Mr. Kim suggested that

9   Mr. Babineau, an engineer, help Mr. Jafri, and Messrs. Jafri and Babineau did collaborate

10  together in July 2013.

11      Mr. Kim apparently thought Mr. Jafri's idea was a good one, and in September 2013

12  discussed the possibility of forming a business based on the same with Mr. Babineau. Mr.

13  Babineau thought the concept warranted at least an examination, and began to evaluate the

14  possibility of forming a business on the concept when Mr. Babineau and Mr. Kim gained

15  access to the same data Mr. Jafri had in September 2013. They called this evaluation "Project

16  Recon," or just "Recon."

17      Mr. Babineau immediately realized that Recon would need a data engineer and

18  recruited Ms. Lillian Chou ("Ms. Chou") to assist in October 2013. From then on, Mr.

19  Babineau, Mr. Kim, and Ms. Chou collaborated together on Recon, in the evenings and off

20  time, to evaluate the possibility of forming a business on the data. At no point beginning in

21  September 2013, or any time thereafter, did the Messrs. Babineau and Kim, and Ms. Chou

22  come to any agreement to form a definite business together.

23      In March 2014, Mr. Kim limited his involvement with the business evaluation as a

24  result of two events: 1) Mr. Babineau, Mr. Kim, and Ms. Chou were unable to come to an

25  agreement with a provider as to the continued use of its datasets, and 2) Mr. Kim moved from

26  California to Texas to accept a position with Surveyor Capital. Mr. Kim admitted he would

27  not be able to continue to work with Mr. Babineau and Ms. Chou due to conflicts of interest.

28      From March 2014 onwards, Mr. Kim showed no interest in continuing to evaluate the

business concept, or to work with Mr. Babineau and Ms. Chou. Things ultimately fell apart in September 2014, when Mr. Kim, who had then only been marginally involved in Recon, sought to terminate Ms. Chou's involvement in the project, and shut down all further work.

In late-September 2014, after Mr. Kim terminated the previous project, Mr. Babineau and Ms. Chou decided to start a company together, and started afresh with respect to all computer code and design. They set aside all code and design developed prior to September 2014, and under Recon, including any code that may have been developed in consultation with Mr. Kim. It was Mr. Babineau and Ms. Chou's new project, wiped clean of any input from Mr. Kim, that eventually evolved into Second Measure, Inc. ("Second Measure"). As a result, Mr. Kim is not entitled to any piece of Second Measure. Critically, at no point during or prior to September 2014 did any of Mr. Babineau, Ms. Chou, or Mr. Kim refer to the project as "Second Measure."

In or around January 2015, Second Measure invited Mr. Kim to join Second Measure as a consultant, which he agreed to that month. The Consulting Agreement provided that Mr. Kim would advise Second Measure in exchange for a total of 10% of the stock of Second Measure, earned over time. Despite the Consulting Agreement, Mr. Kim failed to provide the significant consulting services required of him. As such, Mr. Kim never earned any interest in Second Measure.

### Mr. Kim's Description Of The Action

Mr. Kim disagrees with the description of the action submitted by Second Measure, Mr. Babineau and Ms. Chou.  Mr. Kim submits the following description of the action:

Mr. Kim is an investment professional with many years' experience in the financial markets.  Mr. Babineau is a computer software engineer with experience working with and managing large sets of data.  Mr. Kim and Mr. Babineau co-founded a business together in September 2013 with the idea of using large sets of consumer credit card and bank transaction data to identify potential changes in metrics that affect stock prices, and selling that data and related services to hedge funds and venture investors wanting that kind of insight.  Shortly

after they founded their business, in November 2013, they discussed naming the business Second Measure.  Mr. Kim liked this name because he believed it denoted musicality.

Given their respective professional backgrounds, they agreed that Mr. Babineau, as a computer engineer, would be responsible for enabling access to and organizing the large sets of consumer spending data that Second Measure planned to use.  They agreed that Mr. Kim, as the investment professional, would be responsible for figuring out how the data should be applied.  Both parties were inexperienced in entrepreneurship and lacked legal training, so they never created a written partnership agreement or similar document.

Mr. Kim and Mr. Babineau also orally agreed that their respective interests in Second Measure would be equal, with each of them owning 50% of the business.  The two partners spent many months working long hours, including well past midnight on many occasions, organizing large data sets, and applying various financial metrics that Mr. Kim formulated to the data.  During this time they often worked together until 2 a.m. or 3 a.m., tagging and organizing massive data sets for more than 100 different companies.  Like many young, Silicon Valley co-founders, they spent hours working out of each other's apartment as well as many hours together on Google video chat carrying on back and forth discussions regarding the best methodology and metrics to interpret the data sets.  Consistent with their agreement to be equal partners in Second Measure, they split the costs for running the business 50/50.

In September 2014, Mr. Babineau, and his girlfriend Ms. Chou, who Mr. Babineau had brought into the business to help on technical projects, wrongfully and physically shut Mr. Kim out of Second Measure by depriving him of access to computer servers and shared online applications to prevent him from doing any further work or accessing the work product he had created up to that date.   Mr. Babineau and Ms. Chou thereafter cut off all communication with Mr. Kim, while continuing to develop Second Measure's business.

After locking him out of Second Measure in September 2014, Mr. Babineau and Ms. Chou incorporated the business as "Second Measure, Inc." in Delaware as their own business. Mr. Babineau and Ms. Chou were granted large blocks of stock in the company, and now

Joint Pretrial Conference Statement                                          Case No.  3:15-CV-03395

hold themselves out to the public as the sole founders and majority owners of the business. To this day, they refuse to grant Mr. Kim any ownership interest in the business, and refuse to recognize his status as a co-founder of Second Measure.  They have also refused to share any of the profits of the business with him.  The Second Measure, Inc. that exists today is merely a de-facto continuation of the Second Measure partnership that Mr. Kim and Mr. Babineau co-founded.

### B.  Relief Prayed

Mr. Babineau, Ms. Chou, and Second Measure seek a judicial declaration that Mr. Kim is now owed any equity interest in Second Measure, that they did not breach any duty owed to Mr. Kim, and are not liable to Mr. Kim in any manner. Second Measure seeks damages in an amount according to proof from Mr. Kim from his breach of the parties' consulting agreement. Mr. Babineau, Ms. Chou, and Second Measure seek costs of suit, interest at the maximum legal rate, and such other relief as the Court deems just and proper.

Mr. Kim seeks general, exemplary, and special damages in an amount according to proof against Mr. Babineau, Ms. Chou, and Second Measure, costs of suit, interest at the maximum legal rate, and such other relief as the Court deems just and proper, and a judgment returning to him his 50% ownership interest in the business that is now Second Measure, Inc. Mr. Kim will request that the Court impose a constructive trust over the equity of Second Measure held by Mr. Babineau and Ms. Chou, and that equity sufficient to recognize his true ownership interest be transferred to Mr. Kim.  Mr. Kim will also ask for an alternative remedy in the form of quantum meruit for the reasonable value of all services he performed for which he has not been compensated.

### 2.     FACTUAL BASIS OF THE ACTION

### A.  Disputed Facts

**Mr. Babineau, Ms. Chou, and Second Measure's Request for Declaratory Relief:**

- Whether any of Mr. Babineau, Ms. Chou, and Mr. Kim formed a partnership;
- Whether any such partnership terminated in September 2014 on account of either Mr. Kim, Mr. Babineau, or Ms. Chou's conduct; and

- Whether Mr. Babineau, Ms. Chou, or Second Measure are in any way liable to Mr. Kim.

**Second Measure's Breach of Consulting Agreement Claim:**

- Whether Second Measure and Mr. Kim entered into an oral Consulting Agreement;
- Whether Mr. Kim breached the Consulting Agreement;
- Whether Second Measure performed all obligations required of it under the Consulting Agreement;
- Whether Second Measure suffered damages as a result of Mr. Kim's breach; and
- Whether Second Measure's claims are barred by the statute of frauds.

**Mr. Kim's Breach of Express Partnership Agreement Claim:**

- Whether Mr. Kim and Mr. Babineau entered into an oral partnership agreement;
- Whether Mr. Babineau breached the oral partnership agreement;
- Whether Mr. Kim performed all obligations required of him under the oral partnership agreement; and
- Whether Mr. Kim suffered damages as a result of Mr. Babineau's breach.

**Mr. Kim's Breach of Implied Partnership Agreement Claim:**

- Whether Mr. Kim and Mr. Babineau entered into an implied partnership agreement;
- Whether Mr. Babineau breached the implied partnership agreement;
- Whether Mr. Kim performed all obligations required of him under the implied partnership agreement; and
- Whether Mr. Kim suffered damages as a result of Mr. Babineau's breach.

**Mr. Kim's Breach of Fiduciary Duty Claim:**

- Whether there existed any relationship between Mr. Kim and Mr. Babineau which caused Mr. Babineau to owe a fiduciary duty to Mr. Kim;
- Whether Mr. Babineau breached any fiduciary duties owed to Mr. Kim in connection with the termination of the partnership Mr. Kim alleges or Mr. Babineau's conduct thereafter incorporating and operating Second Measure;
- Whether Mr. Kim was harmed by Mr. Babineau's breach; and

- Whether Second Measure or Ms. Chou are secondarily liable for any alleged breaches of fiduciary duty by Mr. Kim; and
- Whether a constructive trust should be crated over the equity interests in Second Measure.

**Mr. Kim's Claim of Conversion:**

- Whether Mr. Kim had a right to possess an item of personal property;
- Whether Mr. Babineau, Ms. Chou, and Second Measure intentionally and substantially interfered with Mr. Kim's property, preventing Mr. Kim from having access to the property;
- Whether Mr. Kim consented to Mr. Babineau, Ms. Chou, and Second Measure's conduct;
- Whether Mr. Kim was harmed; and
- Whether Mr. Babineau, Ms. Chou, and Second Measure's conduct was a significant factor in Mr. Kim's harm.

**Aiding and Abetting Liability**

- Whether, if Mr. Babineau breached any fiduciary duty owed to Mr. Kim, any of Ms. Chou or Second Measure are liable for aiding and abetting that breach.

**Quantum Meruit**

- Whether Mr. Kim is entitled to the alternative remedy of quantum meruit.

### B. Undisputed Facts

- In September of 2013 Mr. Kim and Mr. Babineau began collaborating together, along with Ms. Chou. The parties had a falling out in September 2014, which is documented in various emails exchanged by the parties in September 2014.
- Mr. Kim contends that he and Mr. Babineau were partners from September 2013 to September 2014 and Mr. Babineau denies that any partnership existed, or alternatively asserts that if a partnership existed Ms. Chou was a partner with Mr. Kim and Mr. Babineau.

- After the parties' falling out, Mr. Babineau and Ms. Chou, in January of 2015, incorporated a business in Delaware under the name Second Measure, Inc. Mr. Babineau and Ms. Chou currently hold equity interests in Second Measure, Inc. and Mr. Kim does not.

- Mr. Kim claims that Second Measure, Inc. is really just a de facto continuation of the business partnership he alleges he had with Mr. Babineau. Mr. Babineau denies that and claims that Second Measure, Inc. is a new business created by him and Ms. Chou after September 2014 that is unrelated to any work done with Mr. Kim.

### C.  **Issues For The Court (Not Jury) To Decide**

### **Second Measure, Mr. Babineau, and Ms. Chou's Position.**

Second Measure, Mr. Babineau, and Ms. Chou object to Mr. Kim's belated request for a constructive trust, and other injunctive relief—set forth for the first time in this Statement. Mr. Kim's request for a constructive trust to be established to hold Second Measure's shares should be denied, because Mr. Kim failed to make a demand for equitable relief in his complaint as required by Federal Rules of Civil Procedure 8(a). Accordingly, when a plaintiff neglects to request equitable relief in his pleadings, his claim should be denied.  *See generally Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 961 F.2d 1148, 115 (5th Cir. 1992); *J. Ray McDermott Engineering, LLC v. Furgo-McClelland Marine Geosciences, Inc.,* No. CIV.A.04 1335, 2006 WL 2990156, at \*3 (E.D. La. Oct. 17, 2006); *Conkey v. Reno*, 885 F.Supp. 1389, 1392 (D. Nev. 1995); *Centrifugal Acquisition Corp. v. Moon,* No. 09-C-327, 2010 WL 152074, at \*1 (E.D. Wis. Jan. 14, 2010).  A contrary decision would undeniably prejudice the Second Measure Parties, as they were not put on notice of the equitable request. The Second Measure Parties' litigation strategy, including what was sought after in discovery, was based on what Mr. Kim included in his pleadings.

In *Manser v. Sierra Foothills Public Utility District*, the court denied plaintiff's request for equitable relief—reinstatement—noting that she "failed to allege a remedy of reinstatement or any other form of equitable relief," in the three amended complaints she filed.  (*Id.* at \*1.)  Instead, each complaint only sought compensatory damages.  No. CVF08-

8

1250 LJO SMS, 2010 WL 2465418, at *1 (E.D. Cal. June 15, 2010). It was not until she included a statement in the Joint Pre-trial Statement that the defendant was put on notice that plaintiff was seeking an equitable remedy. *Id.* at *3. The time in which she made this disclosure was "after discovery had closed and only mere weeks before the trial date." *Id.* The defendant claimed that "throughout the course of this litigation, plaintiff represented that her claims were limited to the recovery of monetary damages. Defendant argue[d] that her claims for monetary damages formed the strategy for defendant's defense and defendant ha[d] been prejudiced from plaintiff's failure to disclose she was seeking reinstatement." *Id.* at *2. In response, plaintiffs argued that "there is no requirement that an entitled remedy must be specifically pled," and pointed to Federal Rules of Civil Procedure 54(c), which provides that: "a final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." *Id.* at *3. Rather, she was of the position that she only had to provide a "general description of her damages." *Id.* at *2. The court disagreed, explaining that FRCP 54(c) was applied to circumstances "where damages may exceed the amount in the initial pleading." *Id.* at *3. FRCP 54(c), the court explained, "does not sanction the granting of relief not prayed for in the pleadings if the relief has prejudiced the opposing party." *Id.* In its ruling, the court found that the defendant, without notice of the equitable relief sought, pursued a litigation strategy based on the pleadings and plaintiff's disclosures, which consisted of specific decisions not to pursue particular discovery or consult certain experts. Consequently, the court denied plaintiff's request for equitable relief. *Id.* at *3-4.

**Mr. Kim's Position.**

Mr. Kim is requesting that the Court enter a judgment under its equitable powers transferring to him his rightful ownership interest in the business he co-founded, which now goes by the name Second Measure, Inc., through the legal doctrine of constructive trust. Second Measure, Mr. Babineau and Ms. Chou are opposing this relief with the demonstrably false assertion that this is somehow a new, surprise "belated" request for equitable relief, and that they were not aware that Mr. Kim intended through this action to seek any equitable

relief.          There is simply no merit to the assertion that Mr. Kim is making a new, "belated" claim for equitable relief.  *__Mr. Kim expressly and unambiguously requested__* *__equitable relief (i.e., the transfer to him of an ownership interest in the business) in his__* *__counterclaim prayer in this action__*.  *Specifically, Mr. Kim requested in his counterclaim* *prayer an order requiring that the 50% ownership interest in Second Measure that was* *taken from him be transferred back to him in the final judgment in this case.  In* *Paragraph 2 of his prayer in his Counterclaim he specifically requested "the recovery of* *his one half interest in the joint/venture partnership."*  That is not a request for money damages - - money damages were requested in the previous paragraph in the prayer.  That is a request for equitable relief.  It is a demand that specific property be transferred to him.

The assertion of Second Measure, Mr. Babineau and Ms. Chou that they were unaware that Mr. Kim was seeking to have property transferred to him in this case is therefore plainly false.  This case is thus materially different from the case cited above by Second Measure, where a party never even hinted that it wanted equitable relief until the pretrial conference! *Manser v. Sierra Foothills Public Utility District*,, No. CVF08-1250 LJO SMS, 2010 WL 2465418, at *1 (E.D. Cal. June 15, 2010).  Here, Plaintiffs were on notice from the very beginning that Mr. Kim was asking for equitable relief.

Moreover, even if Mr. Kim had not clearly asked to have an ownership interest in Second Measure transferred to him in his pleading, that would make no difference.  Rule 54(c) of the Federal Rules of Civil Procedure clearly establishes that a party is entitled to seek any remedy or form of relief at trial even if it was not requested in the pleadings.  See F.R.C.P. 54(c).

Respectfully submitted,

Date:  April 18, 2017                      DHILLON LAW GROUP INC.


                                     By:  _/s/ Nitoj P. Singh_
                                          Nitoj P. Singh

                                          Attorneys for Second Measure Inc., Michael
                                          Babineau, and Lillian Chou

1

Date:  April 18, 2017                         THE LAW OFFICES OF THOMAS V. CHRISTOPHER

2

                                                    By:   */s/ Thomas V. Christopher*

3

                                                          Thomas V. Christopher

4

                                                    Attorneys for Steven Kim

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPENDIX A**

**JOINT EXHIBIT LIST**

| No. | Description | Bates No. | When Offered | When Received | Limits |
|-----|-------------|-----------|--------------|---------------|--------|
| 1 | Defendant Steven Kim's Answer to Complaint and Counterclaims | Kim Depo Exhibit 1 | | | |
| 2 | Email Dated 9/17/13 to Michael Babineau From Steven Kim | Kim Depo Exhibit 2 | | | |
| 3 | Email Dated 9/27/13 to Michael Babineau From Steven Kim | Kim Depo Exhibit 3 | | | |
| 4 | Email String Dated 11/1/13 to Lillian Chou From Steven Kim | Kim Depo Exhibit 4 | | | |
| 5 | Email Dated 12/18/13 to Colin Luce From Steven Kim | Kim Depo Exhibit 5 | | | |
| 6 | Email String Dated 1/29/14 to Michael Babineau, Lillian Chou From Steven Kim | Kim Depo Exhibit 6 | | | |
| 7 | Email String Dated 3/26/14 to Michael Babineau From Steven Kim | Kim Depo Exhibit 7 | | | |
| 8 | Email String Dated 3/27/14 to Steven Kim From Collin Luce | Kim Depo Exhibit 8 | | | |
| 9 | Email String Dated 5/9/14 to Steven Kim From Michael Babineau | Kim Depo Exhibit 9 | | | |
| 10 | Email Dated 7/8/14 to Michael Babineau From Steven Kim | Kim Depo Exhibit 10 | | | |
| 11 | Email Dated 8/26/14 to Steven Kim From Michael Babineau | Kim Depo Exhibit 11 | | | |
| 12 | Email String Dated 9/2/14 to Michael Babineau | Kim Depo | | | |

1

| | | | Kim Depo | | | |
|---|---|---|---|---|---|---|
| | | From Lillian Chou | Exhibit 12 | | | |
| | 13 | Email Dated 9/4/14 to Steven Kim From Michael Babineau | Kim Depo Exhibit 13 | | | |
| | 14 | Email Dated 9/10/14 to Steven Kim and Lillian Chou From Michael Babineau | Kim Depo Exhibit 14 | | | |
| | 15 | Email Dated 9/11/14 to Steven Kim From Lillian Chou | Kim Depo Exhibit 15 | | | |
| | 16 | Email String Dated 9/11/14 to Steven Kim From Michael Babineau | Kim Depo Exhibit 16 | | | |
| | 17 | Email String Dated 9/12/14 to Michael Babineau From Steven Kim | Kim Depo Exhibit 17 | | | |
| | 18 | Document Entitled "Recon Funding" | Kim Depo Exhibit 18 | | | |
| | 19 | Email Dated 9/15/14 to Steven Kim From Michael Babineau | Kim Depo Exhibit 19 | | | |
| | 20 | Email String Dated 9/15/14 to Michael Babineau From Steven Kim | Kim Depo Exhibit 20 | | | |
| | 21 | Email String Dated 9/15/14 to Michael Babineau, Lillian Chou From Steven Kim | Kim Depo Exhibit 21 | | | |
| | 22 | Email Dated 9/18/14 to Steven Kim From Michael Babineau | Kim Depo Exhibit 22 | | | |
| | 23 | Email String Dated 11/18/14 to Michael Babineau From Steven Kim | Kim Depo Exhibit 23 | | | |
| | 24 | Email String Dated 12/10/14 to Michael Babineau From Steven | Kim Depo Exhibit 24 | | | |

2

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | | Kim | | | | |
| 2–3 | 25 | Document Entitled "Recon Share Structure" | Kim Depo Exhibit 25 | | | |
| 4–5 | 26 | Email String Dated 1/26/15 to Steven Kim From P. Charu Satia | Kim Depo Exhibit 26 | | | |
| 6–7 | 27 | Document Entitled "Todo" | Kim Depo Exhibit 27 | | | |
| 8–9 | 28 | Chart with Financial Information | Kim Depo Exhibit 28 | | | |
| 10–11 | 29 | Google Chat Messages Between Steven Kim and Mike Babineau | Kim Depo Exhibit 29 | | | |
| 12–14 | 30 | Steven Kim's Notice of FRCP 13 11 30(b)(6) Deposition of Second Measure, Inc., and Michael Babineau | Babineau Depo Exhibit 30 | | | |
| 15–17 | 31 | E-mail String Dated 1/29/14 to Michael Babineau and Lillian Chou from Steven Kim | Babineau Depo Exhibit 31 | | | |
| 18–21 | 32 | HipChat Messages Between Michael Babineau, Steven Kim, and Lillian Chou | Babineau Depo Exhibit 32 / SMI00008216-18 | | | |
| 22–24 | 33 | Email String Dated 9/12/14 to Michael Babineau from Steven Kim | Babineau Depo Exhibit 33 | | | |
| 25–27 | 34 | Email String Dated 9/12/14 from Michael Babineau to Lillian Chou | Babineau Depo Exhibit 34 / SMI00003038-39 | | | |
| 28 | 35 | Email Dated 9/18/14 to | Babineau Depo | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | Joe Polverari from Michael Babineau | Exhibit 35 / SMI00003586 | | | |
| | 36 | Email String Dated 11/14/14 to Kevin Heller from Michael Babineau | Babineau Depo Exhibit 36 / SMI00004830 | | | |
| | 37 | Document Entitled "Action by Written Consent of the Stockholders of Second Measure, Inc." | Babineau Depo Exhibit 37 / SMI00006397 | | | |
| | 38 | Email Dated 3/26/15 to Y Combinator from Michael Babineau | Babineau Depo Exhibit 38 / SMI00018551-58 | | | |
| | 39 | Document Entitled "Vesting Calculations" | Babineau Depo Exhibit 39 / SMI00018421 | | | |
| | 40 | Counterclaim Defendants Second Measure, Inc., Michael Babineau, and Lillian Chou's Counterclaims and Affirmative Defenses, and Michael Babineau and Lillian Chou's Counterclaims Against Steven Kim | Chou Depo Exhibit 40 | | | |
| | 41 | Counterclaimant and Counterclaim Defendant Lillian Chou's Supplemental Responses and Objections to Defendant Counterclaimant Steven Kim's First Set of Interrogatories | Chou Depo Exhibit 41 | | | |

4

| 42 | Document Entitled "Second Measure Balance Sheet March 31, 2016" | Chou Depo Exhibit 42 | | | |
|---|---|---|---|---|---|
| 43 | Expert Report of Jim Timmins, Teknos Associates, July 1, 2016 | Timmins Depo Exhibit 1000 | | | |
| 44 | Document Entitled "VC Funding Can Be Bad for Your Start-up" | Timmins Depo Exhibit 1001 | | | |
| 45 | Expert Report of Rajeev S. Shah | Shah Depo Exhibit 1005 | | | |
| 46 | Expert Witness Rebuttal Report, Mark Newton, CPA, ABV, CFF, July 29, 2016 | Newton Depo Exhibit 1000 | | | |
| | | | | | |
| | | | | | |
| 100 | Email String Dated 7/9/13 to Zafar Jafri from Michael Babineau | SMI00004293-97 | | | |
| 101 | Document Entitled "Data Evaluation Agreement" | SMI00004437-39 | | | |
| 102 | HipChat Messages Between Michael Babineau, Steven Kim, and Lillian Chou | SMI00008597-98 | | | |
| 103 | HipChat Messages Between Michael Babineau, Steven Kim, and Lillian Chou | SMI00008319-24 | | | |
| 104 | HipChat Messages Between Michael Babineau, Steven Kim, and Lillian Chou | SMI00008973-89 | | | |
| 105 | HipChat Messages Between Michael Babineau, Steven Kim, and Lillian Chou | SMI00008761-76 | | | |

5

| | | | | | |
|---|---|---|---|---|---|
| 106 | HipChat Messages Between Michael Babineau, Steven Kim, and Lillian Chou | SMI00008807-19 | | | |
| 107 | HipChat Messages Between Michael Babineau, Steven Kim, and Lillian Chou | SMI00008733-44 | | | |
| 108 | Email Dated 2/24/14 to Steven Kim and Michael Babineau from Colin Luce | SMI00002026-27 | | | |
| 109 | Email Dated 3/6/14 to Colin Luce and Michael Babineau from Steven Kim | SMI00001747 | | | |
| 110 | Email Dated 3/10/14 to Colin Luce from Steven Kim | SMI00002207 | | | |
| 111 | Email Dated 3/17/14 to Colin Luce and Michael Babineau from Steven Kim | SMI00001753 | | | |
| 112 | Email String Dated 3/28/14 to Steven Kim from Michael Babineau | SMI00002216-17 | | | |
| 113 | Email Dated 8/18/14 to Michael Babineau and Lillian Chou from Steven Kim | SMI00000262 | | | |
| 114 | Email String Dated 8/25/14 to Michael Babineau from Lillian Chou | SMI00005171 | | | |
| 115 | Email Dated 9/2/14 to Steven Kim and Lillian Chou from Michael Babineau | SIM00000364 | | | |
| 116 | Email Dated 1/8/15 to Michael Babineau from Steven Kim | SMI00002675-79 | | | |
| 117 | Email Dated 1/27/15 to Michael Babineau from | SMI00007578 | | | |

6

| | | | | | |
|---|---|---|---|---|---|
| | Steven Kim | | | | |
| | | | | | |
| | | | | | |
| 200 | Email Dated 10/29/13 to Michael Babineau and Lillian Chou from Steven Kim | SMI00000071-72 | | | |
| 201 | Email Dated 11/5/2013 to Michael Babineau and Lillian Chou from Steven Kim | SMI00000086 | | | |
| 202 | Email Dated 11/14/13 to Lillian Chou from Trello | SMI00002964-65 | | | |
| 203 | Email Dated 12/2/13 to Michael Babineau and Steven Kim from Lillian Chou | SMI00000095 | | | |
| 204 | Email Dated 12/16/13 to Steven Kim and Michael Babineau from Lillian Chou | SMI00000102 | | | |
| 205 | Email Dated 11/19/2013 to Michael Babineau and Lillian Chou from Steven Kim | SMI00000092-94 | | | |
| 206 | Email Dated 2/25/14 to Colin Luce and Michael Babineau from Steven | SMI00000211-213 | | | |

7

| | | | | | | |
|---|---|---|---|---|---|---|
| | | Kim | | | | |
| | 207 | Email Dated 3/10/14 to Michael Babineau from Steven Kim | SMI00002208-09 | | | |
| | 208 | Email Dated 5/9/14 to Steven Kim from Michael Babineau | SMI00002601 | | | |
| | 209 | Email Dated 8/14/14 to Lillian Chou and Steven Kim from Michael Babineau | SMI00000259 | | | |
| | 210 | Email Dated 8/14/14 to Lillian Chou from Michael Babineau | None | | | |
| | 211 | Email Dated 9/1/14 to Lillian Chou from iDoneThis | SMI00003445-46 | | | |
| | 212 | Email Dated 8/26/14 to Steven Kim and Lillian Chou from Michael Babineau | SMI00000143 | | | |
| | 213 | Email Dated 8/25/14 to Lillian Chou from Michael Babineau | SMI00000408 | | | |
| | 214 | Email Dated 9/2/14 to Steven Kim from Lillian Chou | SMI00000361 | | | |
| | 215 | Email Dated 9/30/14 to | SMI00006953- | | | |

| | | | | | |
|---|---|---|---|---|---|
| | Drew Larner from Michael Babineau | 54 | | | |
| 216 | Email Dated 11/14/14 to Lillian Chou from Michael Babineau | SMI00003572 | | | |
| 217 | Email Dated 11/18/14 to Keith Bonzelaar from Michael Babineau | SMI00004852 | | | |
| 218 | Article Dated 8/10/15 By Lucas Matney | SMI00018506-58 | | | |
| 219 | Presentation Entitled "Sample Data and Insights" | SMI00013557-69 | | | |
| 220 | Presentation Entitled "Project Recon" | SMI00003448-57 | | | |
| 221 | Chat Logs Produced by Second Measure/Babineau | SMI00008596-8600 | | | |
| 222 | Chat Logs Produced by Second Measure/Babineau | SMI00008974-85 | | | |
| 223 | Chat Logs Produced By Second Measure/Babineau | SMI00008176-81 | | | |

# APPENDIX B

## PARTY WITNESS LISTS

Second Measure, Mr. Babineau, and Ms. Chou's Witness List:

1. Mr. Babineau

   a. Substance of Testimony: Mr. Babineau will testify to his financial and technical background, and how his background led to Mr. Kim introducing Mr. Zafar Jafri to Mr. Babineau in July 2013. Mr. Babineau will testify to how he and Mr. Kim discussed Mr. Jafri's idea, and decided to replicate the same, after obtaining the same data set Mr. Jafri had access to in September 2013. Mr. Babineau will testify to how he, Ms. Chou, and Mr. Kim thereafter collaborated to evaluate the idea, and to see if a viable business could possibly be formed under the name "Project Recon," but ultimately that no business was formed on account of not having access to data, Mr. Kim's conflicts, and a falling out of the parties in September 2014. Mr. Babineau will testify that after separating from Mr. Kim, he and Ms. Chou formed Second Measure, without the benefit of anything they created with Mr. Kim. Mr. Babineau will testify to how Second Measure differs from Project Recon. All testimony is non-cumulative.

   b. Time Estimate: 8 hours

2. Ms. Chou

   a. Substance of Testimony: Ms. Chou will testify to her involvement with Project Recon, the evaluation of the concept, from October 2013 to September 2014. Ms. Chou will testify to the parties falling out, and how Mr. Kim sought to exclude here from the project. Mr. Chou will further testify as to how Second Measure differs from anything created during Project Recon. Ms. Chou's non-cumulative testimony includes her technical background and the specific insights she brought to Project Recon and then Second Measure.

   b. Time Estimate: 5 hours

3. Mr. Timmins

a. Substance of Testimony: Mr. Timmins is an expert witness that will testify to the value of Project Recon as of September 2014. All testimony is non-cumulative.

b. Time Estimate: 2 hours

4. Mr. Kim

a. Substance of Testimony: Mr. Kim is a hostile witness. Mr. Kim is expected to testify to the fact that Mr. Jafri first tipped him off to the fact that the consumer spending data was available. Mr. Kim is expected to testify to the fact that the idea was not novel, and that he did not provide any novel or proprietary insights. Mr. Kim is expected to testify to the nature of his dealings with Mr. Babineau and Ms. Chou during the September 2013 to September 2014 Project Recon time period. Mr. Kim is expected to testify to his varying interest in the project, and his admitting that he would be conflicted from working on the project should it turn into an actual business. Mr. Kim is expected to admit that he demanded that all work stop on Project Recon, and that Ms. Chou be excluded from the project, before Mr. Babineau and Ms. Chou separated from Mr. Kim. Mr. Kim is expected to testify to the fact that he later provided some consulting services to Mr. Babineau and Ms. Chou when they separated from Mr. Kim, and ultimately came to consulting agreement with Second Measure, on which he did not perform.  All testimony is non-cumulative.

b. Time Estimate: 5 hours.

5. Mr. Shah

a. Substance of Testimony: Mr. Shah is an expert witness. Mr. Shah is expected to rebut Mr. Kim's testimony that he provided novel or proprietary insights to Project Recon, including that his insights were well known throughout the industry.

b. Time Estimate: 2 hours

2

Mr. Kim's Witness List

1.    Mr. Kim

 a. Substance of Testimony:  Mr. Kim will provide testimony regarding he and Mr. Babineau's co-founding of Second Measure as a partnership in September 2013, the discussions regarding the naming of Second Measure in November 2013 and thereafter, the operations and management of the business between September 2013 and September 2014, the business plan he and Mr. Babineau were pursuing, including the nature of the business, its anticipated products and services, and its target customer base.  Mr. Kim will also provide testimony regarding Mr. Babineau's ejection of Mr. Kim from the business in September 2014.  All testimony is non-cumulative.

 b. Time Estimate:  6 hours

2.    Mr. Babineau

 a. Substance of Testimony:  Mr. Babineau is a hostile witness.  Mr. Kim intends to elicit testimony from Mr. Babineau regarding he and Mr. Babineau's co-founding of Second Measure as a partnership in September 2013, there discussions regarding the naming of Second Measure in November 2013 and thereafter, the operations and management of the business between September 2013 and September 2014, Mr. Babineau's ejection of Mr. Kim from the partnership in September 2014, The incorporation of the business under the name "Second Measure, Inc." in Delaware in early 2015, the similarities between the current Second Measure, Inc., and the business Mr. Babineau and Mr. Kim operated, the current valuation of Second Measure, including its financial performance, all venture and other investments in Second Measure, the relationship between the current Second Measure, Inc., and the partnership Mr. Babineau operated with Mr. Kim.  All testimony is non-cumulative.

 b. Time Estimate:  5 hours

3.    Ms. Chou

Joint Pretrial Conference Statement – Witness List    Case No.  3:15-CV-03395

a. Substance of Testimony:  Ms. Chou is a hostile witness.  Mr. Kim intends to elicit testimony from Ms. Chou regarding he and Mr. Babineau's co-founding of Second Measure as a partnership in September 2013, the operations and management of the business between September 2013 and September 2014, Mr. Babineau's ejection of Mr. Kim from the partnership in September 2014, the incorporation of the business under the name "Second Measure, Inc." in Delaware in early 2015, the similarities between the current Second Measure, Inc., and the business Mr. Babineau and Mr. Kim operated, the current valuation of Second Measure, including its financial performance, all venture and other investments in Second Measure, the relationship between the current Second Measure, Inc., and the partnership Mr. Babineau operated with Mr. Kim.  All testimony is cumulative.

b. Time Estimate: 2:30.

4.  Mr. Drew Larner

a. Substance of Testimony:  His relationship with Mr. Babineau as of September 2014, any knowledge he may have about the reason Mr. Babineau ejected Mr. Kim from the partnership in September 2014, and any aiding and abetting, solicitation or unlawfully encouragement or advice he may have given Mr. Babineau in connection with Mr. Babineau's termination of the partnership and breach of fiduciary duties.  All testimony is non-cumulative.

b. Time Estimate:  1 hour 30 minutes.

5.  Mr. Mark. Newton:

a. Substance of Testimony:  Mr. Newton is an expert witness.  He is expected to provide testimony regarding the value of Second Measure.   All testimony is non-cumulative

b. Time Estimate:  1 hour 30 minutes.

6.  Mr. Jim Timmons:

a. Substance of Testimony:  Mr. Timmons is an expert witness.  He is expected to

1    testify regarding the value of Second Measure.

2        b.  Time Estimate:  1 hour 30 minutes.