1  HARMEET K. DHILLON (SBN: 207873)
   harmeet@dhillonlaw.com
2  NITOJ P. SINGH (SBN: 265005)
   nsingh@dhillonlaw.com
3  DHILLON LAW GROUP INC.
   177 Post Street, Suite 700
4  San Francisco, California 94108
5  Telephone: (415) 433-1700
   Facsimile: (415) 520-6593
6
7  Attorneys for Second Measure, Inc., Michael Babineau,
   and Lillian Chou
8

9                       **UNITED STATES DISTRICT COURT**
10
11                      **NORTHERN DISTRICT OF CALIFORNIA**

                        **SAN FRANCISCO DIVISION**
12

| | |
|---|---|
| SECOND MEASURE, INC., a Delaware corporation, | Case Number: 3:15-CV-03395-JCS |
| Plaintiff, | **PLAINTIFF SECOND MEASURE INC.'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE CERTAIN EVIDENCE FROM DEFENDANT STEVEN KIM'S EXPERT MARK NEWTON** |
| v. | |
| STEVEN KIM, an individual, | Pretrial Conference:  May 19, 2017 |
| Defendant, | Trial Date:           June 1, 2017 |
| | Judge:      Hon. Joseph C. Spero |
| AND RELATED COUNTERCLAIMS. | Courtroom:  G, 15th Floor |
| | [Filed Concurrently with Declaration of Nitoj P. Singh and [Proposed] Order] |



1

Second Measure's Motion *in Limine* 1                     Case No.  3:15-CV-03395-JCS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Second Measure Inc. ("Second Measure") hereby seeks an order precluding Defendant Steven Kim ("Mr. Kim") from referring at trial to, or in any way using, any evidence from expert witness Mark Newton ("Mr. Newton") offering a valuation of any partnership (the "Alleged Partnership") formed between any of Mr. Kim, Counterclaim Defendant Michael Babineau ("Mr. Babineau"), and Counterclaim Defendant Lillian Chou ("Ms. Chou"); a valuation of Second Measure; or any methodologies that may be used to determine the value of the Alleged Partnership or Second Measure.

Simply, in a partnership dispute where the valuation of the partnership was an easily anticipated issue, Mr. Kim failed to provide a timely valuation. Second Measure retained expert Jim Timmins ("Mr. Timmins") to provide a valuation of the Alleged Partnership and Second Measure. Second Measure served Mr. Timmins's Report on July 1, 2016—the expert discovery disclosure deadline. Mr. Timmins's Report concluded, *inter alia*, that the Alleged Partnership had no value, but that Second Measure had a certain value as of March 31, 2016. Mr. Kim did not disclose any expert at that time.

However, Mr. Kim later designated Mr. Newton as a "rebuttal" expert, and served a report that, *inter alia*, purported to set a valuation for the Alleged Partnership and Second Measure. In doing so, Mr. Newton went beyond critiquing and rebutting Mr. Timmins's report, but relied on novel arguments for valuing the Alleged Partnership, and facts and issues not discussed in Mr. Timmins's Report. Mr. Newton's Report was, in essence, an affirmative report masquerading as a rebuttal report.

Because Second Measure anticipates that Mr. Kim will try to use this information at trial to set a valuation for the Alleged Partnership or Second Measure, Second Measure now seeks an order excluding such testimony as not properly disclosed by the expert discovery cutoff.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to the Court's April 7, 2016 Order (Dkt. No. 42), the deadline for expert disclosures required by the Federal Rules of Civil Procedure was set for July 1, 2016. Pursuant to the same order, on July 1, 2016, Second Measure served the expert report of Mr. Timmins. (Declaration of Nitoj P.

Singh in Support of Motion *in Limine* 1 ("Singh Decl."), ¶ 2, Ex. 1.) Mr. Kim did not serve any expert report by July 1, 2016. (Singh Decl., ¶ 3.)

Mr. Timmins's Report concluded, *inter alia*, that the Alleged Partnership had no value as of September 2014, but that Second Measure had a value as of March 31, 2016. (Singh Decl., Ex. 1, ¶ 91.) Mr. Timmins, in coming to his conclusion about the September 2014 valuation, relied on, *inter alia*, the fact that Mr. Babineau and Ms. Chou refused to work with Mr. Kim at that time, and did not have a shared vision of what should be done next; that the Alleged Partnership did not have the right to use any consumer spending data for commercial purposes, and therefore had no source or potential source of revenue, sales, or customer relationships; that the Alleged Partnership had no working product, and did not have the funds to develop a working product; and that the Alleged Partnership could not sustain itself financially, or raise external funding. (Singh Decl., Ex. 1, ¶¶ 79-91.)

Mr. Newton's Rebuttal Report was served on July 28, 2016. (Singh Decl., ¶ 4, Ex. 2.) Mr. Newton's Rebuttal Report did not purport to set a valuation for Second Measure as of March 31, 2016; however, the Rebuttal Report did attempt to set a valuation for the Alleged Partnership as of September 2014, and Second Measure as of March 2015. (*Id.*) In doing so, Mr. Newton relied on a new argument, and new facts, that were not present in Mr. Timmins's Report, but were earlier anticipated.

Mr. Newton argued that as Second Measure was accepted into the Y Combinator incubator program in March 2015, and as the Alleged Partnership and Second Measure were one and the same, it was possible to use Y Combinator's standard deal to set a valuation for the Alleged Partnership as of September 2014. (Singh Decl., Ex. 2, pp. 3-4.) Mr. Newton explains that that Y Combinator's standard deal is a formula by which Y Combinator obtains 7% of the equity of companies in its program, for a payment to those companies of $120,000. (*Id.* at p.4.) Based on simple division ($120,000 divided by 7%), Mr. Newton argues that all companies that join Y Combinator therefore have a valuation of approximately $1.7 million. (*Id.*) From there, Mr. Newton argues that a deduction of 5-10%, for work performed between September 2014 to the date of Y Combinator acceptance, results in a valuation of the Alleged Partnership as of September 2014. (*Id.*)

Mr. Newton also critiqued certain aspects of Mr. Timmins's report directly, such as Mr.

Timmins purported failure to give more weight to past stock sales in coming to a valuation. Second Measure does not dispute that those direct critiques are the proper subject of rebuttal reports.

### III.   ARGUMENT

The court in *Matthew Enterprise, Inc. v. Chrysler Group LLC*, recently set forth the legal standard for rebuttal experts:

> Federal Rule of Civil Procedure 26, which governs parties' disclosure obligations, demands that parties "make [their] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(1)(D). Parties must accompany their disclosures of "the identity of any [expert] witness... [with] a written report" that "contain[s] (i) a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2).
>
> "[W]hen a court's scheduling order allows rebuttal reports, a party may only submit an expert rebuttal 'if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party.' " *In re Asbestos Products Liab. Litig. (No. VI)*, No. 09-CV-74351X, 2012 WL 661673 at *1 (E.D. Pa. Feb. 8, 2012) (citing Fed. R. Civ. Pro. 26(a)(2)(c)); *see also Columbia Grain, Inc. v. Hinrichs Trading, LLC,* No. 3:14-CV-115-BLW, 2015 WL 6675538 at *2 (D. Idaho Oct. 30, 2015); *Century Indem. Co. v. Marine Grp., LLC*, No. 3:08-CV-1375-AC, 2015 WL 5521986 at *3 (D. Or. Sept. 16, 2015). "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Bowman v. Int'l Bus. Mach. Corp.*, No. 1:11-CV-0593-RLY-TAB, 2013 WL 1857192 at *7 (S.D. Ind. May 2, 2013) (quoting *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 630 (7th Cir. 2008)). As a result, "[r]ebuttal reports 'necessitate a showing of facts supporting the opposite conclusion of those at which the opposing party's experts arrived in their responsive reports.' " *R & O Const. Co. v. Rox Pro Int'l Grp., Ltd.*, No. 2:09-CV-01749-LRH-LR, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011) (quoting *Bone Care Int'l, LLC v. Pentech Pharmaceuticals, Inc.*, 2010 WL 389444 (N.D. Ill. Sep. 30, 2010)).
>
> However, **"[r]ebuttal expert testimony is limited to 'new unforeseen facts brought out in the other side's case.' "** *Columbia Grain,* 2015 WL 6675538 at *2 (quoting *Century Indem.,* 2015 WL 5521986 at *3). **"Rebuttal testimony cannot be used to advance new arguments or new evidence,"** *id.* at *2, **nor are they the place to "set forth an alternate theory."** *R&O*, 2011 WL 2923703 at *5. "[S]imply because one method [to support an expert opinion] fails, the other does not become 'rebuttal.' " *Id.* (quoting *Morgan v. Commercial Union Assur. Cos.,* 606 F.2d at 555). In other words, "[a] rebuttal report is not the time to change methodologies to account for noted deficiencies; instead, it is to respond to criticisms of such methodologies." *Bowman*, 2013 WL 1857192 at *7.
>
> A party that, without substantial justification, fails to disclose information as required by Rule 26(a) by, for example, exceeding the proper scope of rebuttal, may not "unless



4

Second Measure's Motion *in Limine* 1          Case No.   3:15-CV-03395-JCS

such failure is harmless, [ ] use as evidence at trial...any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). "The sanction is *automatic and mandatory* unless the sanctioned party can show that its violation...was either justified or harmless." *R&O*, 2011 WL 2923703 at *3 (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)) (emphasis added).

*Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 4272430, at *1–2 (N.D. Cal. Aug. 15, 2016) (emphasis added); *see also Vu v. McNeil–PPC, Inc.*, 2010 WL 2179882 at *3 (C.D. Cal. May 7, 2010) (holding that permitting a rebuttal report to address the same general subject matter as the expert report, rather than only the expert's particular findings, would all but nullify the distinction between an initial "affirmative expert" and a "rebuttal expert."); *International Business Machines Corp. v. Fasco Indus., Inc.*, 1995 WL 115421 (N.D. Cal. Mar.15, 1995) ("rebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.").

Here, Mr. Newton's Rebuttal Report goes well beyond what is permitted. Mr. Newton's Report is used to advance new arguments and new evidence, namely that Y Combinator's standard deal could be used to calculate a value of the Alleged Partnership, or Second Measure. Mr. Newton's Report goes beyond simply critiquing and rebutting, by actively sets forth an alternative theory. Per the legal standard for rebuttal experts set forth in *Matthew*, Mr. Newton's report should be limited to critiquing Mr. Timmins's methodologies only.

Mr. Kim will likely rely on *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1141 (9th Cir. 1989), to argue that a rebuttal expert is entitled to offer a "corrected" valuation. In *United States v. 4.0 Acres of Land*, the Court held that the jury's damages award was not against the clear weight of evidence, simply because the amount awarded falls outside the extremes of the experts' valuations, including the rebuttal expert's "corrected" valuation. *Id.* As the parties did not contest whether the rebuttal valuation should have been admitted into evidence in the first instance, the Ninth Circuit's decision is inapposite to the issue at hand. Even so, when forming the "corrected" valuation, the rebuttal expert "accepted [the] appraiser's data and their basic assumptions"—he did not look to *new* facts to formulate a *second* valuation. *Id.*

Nor can Mr. Kim argue that Mr. Timmins's Report, which sets values for the Alleged Partnership and Second Measure, amounts to new unforeseen facts—the standard required by

*Matthew*. In this partnership dispute, it was extremely likely that Second Measure would retain an expert to prepare a valuation, relying on the facts previously disclosed. Mr. Kim's own counsel agreed, stating in a March 2, 2016 meet and confer letter:

> As you know, my client [Mr. Kim] contends that Mr. Babineau and he were in a business partnership, that your client improperly expropriated the entire business for himself and reincorporated it under his own name as Second Measure, Inc., and that my client was damaged as a result. The obvious measure of damages in such a case requires a valuation of Second Measure, because that is what we claim was taken from my client.

(Singh Decl., Ex. 3, p. 2.)

Mr. Kim's failure to timely disclose Mr. Newton as an expert witness, pursuant to Rule 37, is neither substantially justified, nor harmless. Rather, Mr. Kim's underhanded tactic to prepare experts exempt from the discovery deadline for initial expert reports is highly prejudicial, and denies Second Measure a full and fair opportunity to rebut Mr. Newton's competing valuation. *See Vu v. McNeil–PPC, Inc.*, 2010 WL 2179882 at *3 ("Here, as a result of Costco's belated disclosure, Plaintiffs are prevented from rebutting any of Costco's expert opinions dealing with matters outside the scope of Dr. Kelly's report because the deadline for disclosing rebuttal experts has passed. This is a hornbook example of sandbagging, a litigation tactic this Court will not tolerate."); *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1193 (S.D. Cal. 2016) (excluding portions of the city's rebuttal expert's testimony, despite the defendants having the ability to depose the rebuttal expert); *Century Indem. Co. v. Marine Grp., LLC*, No. 3:08-CV-1375-AC, 2015 WL 5521986, at *6 (D. Or. Sept. 16, 2015) (excluding rebuttal report despite party having opportunity to depose "rebuttal" expert).

Mr. Kim attempts to disguise Mr. Newton's valuation as "rebuttal" expert testimony, has denied Second Measure the opportunity to offer its own rebuttal expert to Mr. Newton's entirely distinct valuation method, for use at, and in preparation for, trial. Had Mr. Kim wanted to utilize an expert valuation of the Alleged Partnership or Second Measure at trial, he needed to have disclosed that expert and his or her report by July 1, 2016. This was an obviously anticipated aspect of this case, and Mr. Kim's failure to make a timely disclosure serves to bar him from using the valuations at trial pursuant to Rule 37.

### IV. CONCLUSION

For the foregoing reasons, Second Measure respectfully requests that this Court issue an order precluding Mr. Kim from referring to or introducing any evidence from Mr. Newton that purports to value the Alleged Partnership or Second Measure.

Respectfully submitted,

Date: April 19, 2017                         DHILLON LAW GROUP INC.

                                    By:   */s/ Nitoj P. Singh*
                                          Nitoj P. Singh
                                          Attorneys for Second Measure Inc., Michael Babineau,
                                          and Lillian Chou



7

Second Measure's Motion *in Limine* 1                                    Case No.  3:15-CV-03395-JCS